Jerome **ATILUS**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 25916.

United States Court of Appeals
Fifth Circuit.

Jan. 28, 1969.

Bruce S. Rogow, Miami, Fla., for appellant.

William A. Meadows, Jr., U. S. Atty., Michael J. Osman, Asst. U. S. Atty., Miami, Fla., for appellee.

Before TUTTLE and AINSWORTH, Circuit Judges, and MITCHELL, District Judge.

TUTTLE, Circuit Judge:

This appeal raises the difficult question whether the failure of *non-appointed* counsel in a criminal case in the United States District Court to perfect an appeal, when requested to do so, amounts to such dereliction of duty as to deny an accused the "effective aid" of counsel *at a critical stage of the proceedings.*

This is an appeal in forma pauperis from a denial by the lower court of the appellant's motion to vacate or set aside this sentence, or, in the alternative, to provide for an out of time appeal.

In 1964, the appellant was convicted on five of eight counts of violation of federal narcotics laws. At the trial he was represented by retained counsel. Immediately after the trial, Atilus told his counsel he wished to have an appeal taken from his conviction. However, no appeal was taken during the short statutory period allowed. At the time of his trial and conviction, appellant was serving a sentence at the state prison at Raiford, Florida, and immediately upon his being sentenced by the district court he was returned to Raiford, and was thus in communication with his counsel, if at all, only by correspondence.

On a Section 2255 hearing in the trial court, counsel testified as follows:

"You recollect that you had any conversation with [Atilus] whatsoever about the question of appealing his case?

"A. I think he indicated at the time after the trial that he wanted to

appeal and was interested in appealing.

"Q. Is it not true that it was in court after he was sentenced that he indicated that he wanted to appeal or that he asked if he could appeal?

"A. I believe that is true.

"Q. You never filed any appeal for him, did you?

"A. No, but we had some extensive correspondence regarding an appeal. Do you want me to go into that?"

The extensive correspondence will be referred to in more detail later. In any event, it is clear that Atilus, who was then serving a state sentence at Raiford prison was immediately taken back there and the only communication available between lawyer and client during the period in which an appeal could be filed was by correspondence. The first such correspondence was a letter dated March 26, 1964, six days after the appellant's conviction and sentence. In this letter no word was made concerning an appeal. The lawyer stated "I am sorry that I was not able to see you before you left going back to Raiford. I will do everything that I can to get you *parole*, and to do everything to take care of business while you are there." (emphasis added.) The letter enclosed a power of attorney which the lawyer requested Atilus to sign so that the lawyer might collect his fee. The time to appeal expired on March 30th. No response was made by Atilus to the request that he sign the broad power of attorney contained in the letter of March 26th. However, in subsequent letters of April 2nd and April 8th, the lawyer repeated the request that the power of attorney be signed. Finally in the letter dated April 8th, the lawyer enclosed a second power of attorney for him to sign and said, "I cannot help you until you do this."

Of course, by this time the time for filing notice of appeal had expired.

Our problem here arises from the fact that the status of the relationship between Atilus and his trial counsel is difficult to determine at the time when the right of appeal expired. The lawyer had not asked the court to be relieved from any further representation of Atilus; he had not expressly notified his client that he was withdrawing from the case; nor had he notified him that he would not carry out appellant's expressed wish to file a notice of appeal unless paid the fee already earned and/or a fee for future services. Thus, it seems reasonably clear that on the 30th day of March, 1964, Atilus was represented by counsel who, although unpaid, still owed his client the duty of representation. It seems plain that counsel, not having been paid, concluded that he would rather maintain an ambivalent position with the hope that he might still obtain compensation for what he had done, while realizing that if he specifically withdrew from the case his chances for receiving compensation for past services would go glimmering.

 It is, of course, perfectly plain that an accused has the right to engage private counsel on such terms as are agreed upon between them. No duty devolves upon the court to appoint counsel when private counsel is thus engaged. Counsel, of course, is entitled to charge for his services, but if, for whatever reason, he permits his services to be used without compensation or security for compensation from his client until a critical stage of the proceedings arrives, he can't be permitted simply to bow out without notice either to court or client and frustrate forever the right of the client to protect his vital interests. That seems to be precisely what happened here.

This court has dealt repeatedly with the problem presented when either court appointed counsel or privately engaged counsel is charged, following conviction and sentence, with having failed to provide the effective aid to which the Supreme Court, beginning with Johnson v. Zerbst (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 has said every federally tried accused person is entitled.

We begin with several basic principles. The first of these is that every convicted person has an absolute right to an appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct. 917, 8 L. Ed.2d 21. Where an accused is represented by counsel *appointed by the court*, the Federal Rules of Criminal Procedure undertake to cover the situation that faces such a convicted person when he wishes to file an appeal. This rule provides as follows:

> "After imposing sentence in a case that has gone to trial on a plea of not guilty, the court, shall advise the defendant of his right to appeal and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in forma pauperis. If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant." Federal Rules of Criminal Procedure, Rule 32(a) (2).

In such a situation, and especially now in light of the fact that both appointed trial counsel and appointed appellate counsel are at least partially compensated under the criminal justice act, the likelihood of an accused, represented by court appointed counsel, failing to have his appeal noticed is remote. Nevertheless, when it does occur, and where the trial ends with appointed counsel failing to take the action desired by the accused by filing a notice of appeal and the convicted person is therefore actually without the aid of counsel when the statutory time of appeal expires, this court has had no difficulty in remedying this defect by permitting a late filing. Boruff v. U. S., (5 Cir., 1962), 310 F.2d 918. See Lyles v. U. S., (5th Cir., 1965) 341 F.2d 917.

When the failure to file the notice of appeal occurs where the trial is conducted by counsel of the defendant's own choosing and no notice is brought to the attention of the trial court within the ten day period, either that the convicted person is without counsel or that his retained counsel is reluctant or refuses to file notice of appeal, although requested to do so, the problem becomes somewhat more difficult. However, the harmful effect on the convicted person is exactly the same if, in fact, the conduct of counsel means that he is helpless to act at a critical stage of the proceedings, which, once passed, cannot be recalled after counsel and client work out their relationship to their mutual satisfaction.

This court faced such a situation in Camp v. U. S., (5 Cir., 1965) 352 F.2d 800. In that case, this court discussed the standard which we had recognized was to be applied in the many cases in which convicted persons by Section 2255 motions sought post-conviction relief upon the charge that they were denied effective aid of counsel. The court pointed to the standard set out in Kennedy v. U. S., (5 Cir., 1958) 259 F.2d 883. In the Kennedy case it was said, "Ordinarily, unless a convicted prisoner on habeas corpus or Section 2255 petition alleges and proves misconduct of his counsel amounting to a breach of his legal duty faithfully to represent his client's interest, the defendant in a criminal case is bound by the acts of his counsel. Otherwise the courts would be required to try out the ability and competence of counsel whenever a person was convicted and thereafter complained that his lawyer was incompetent. Cf. Gray v. Ellis, (5 Cir.) 257 F.2d 159."

In the Camp case, supra, this court, in commenting on the above quoted language from the *Kennedy* case, said:

> "It seems to us that this is another way of saying what the Court of Appeals for the Sixth Circuit has said: that appellant will be entitled to his out-of-time appeal if, and only if, he is able to show that his employed counsel failed through fraud or deceit to appeal. This rule is based on the inherent power of a federal court to investigate whether a judgment was obtained by fraud. Calland v. United States, 7 Cir., 1963, 323 F.2d 405. We adopt this rule and hold that appellant was entitled to a hearing on his con-

tention that his trial counsel failed to appeal because of fraud or deceit."

This case was followed by a subsequent decision by this court in Bray v. United States (5 Cir., 1966) 370 F.2d 44, reaffirming the principle announced in Camp. These two cases dealt with the responsibility, as did *Kennedy*, of privately retained counsel where a failure to appeal the original conviction is made the basis of a subsequent complaint of the convicted person that such failure deprived him of his constitutional rights.

In view of the language of this Court's opinion in Camp, equating the standard of conduct required of counsel in the *Kennedy* case to what the Court of Appeals for the Sixth Circuit has denominated "fraud or deceit," we think it appropriate to define the terms "fraud and deceit" used by this court as being broad enough to encompass such conduct as we stated in *Kennedy* to be required of privately engaged counsel— that is the effective aid of counsel is denied to a defendant if there is "[such] misconduct of his counsel amounting to a breach of his legal duty to faithfully represent his client's interests." 259 F. 2d 883, 886. The conduct here, as disclosed by the correspondence, may well fit within the traditional definition of "fraud and deceit," since such terms can apply to an implied misstatement of the existing facts or the failure to state the true facts when such statement is legally required, to the detriment of the one relying upon such conduct, as well as to more active false representations.

In any event, the undisputed evidence in this record indicates that counsel who owed the highest duty which one man owes to another, i.e., that of lawyer to client, failed to discharge that obligation. He failed to take the simple step of filing a notice of appeal, although requested to do so, and failed to notify his client that he was not taking this step so that the latter could protect his interests either by calling on the court for protection under the Federal Rules as an indigent, or requesting the clerk to enter the notice of appeal on his behalf while he sought additional counsel. Such conduct clearly violates the requirement that the accused be afforded "effective aid" at this vital stage of the proceedings.

The trial court clearly recognized the force of this conclusion, since, in denying the relief sought in that court, the trial judge commented, "I think the Fifth Circuit can give you a right to appeal. I cannot. The time has passed."

The case is remanded to the trial court, there to be reinstated on the docket as of the date to be fixed by the trial court from which the time of appeal shall commence to run. Thereafter, unless, within the statutory period, counsel appears on behalf of the appellant, the Clerk of the District Court shall prepare and file forthwith a notice of appeal on his behalf. The matter thereafter will proceed on appeal as if a timely appeal had been filed.

The judgment is reversed and this case is remanded.