**Ex parte Clifton AXEL, Jr.**

No. 69808.

Court of Criminal Appeals of Texas, En Banc.

Sept. 14, 1988.

Clifton Axel, Jr., pro se.

John B. Holmes, Jr., Dist. Atty., Calvin A. Hartmann and Deborah S. Williams, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION

CLINTON, Judge.

This a post conviction habeas corpus proceeding pursuant to Article 11.07, V.A.C.C.P., seeking relief in cause number 309325 in the 174th Judicial District Court of Harris County.

Essentially applicant contends that he was deprived of his right to appeal from a judgment of conviction in that his retained attorney failed to give notice of appeal or to file and present to the trial cc urt a motion to withdraw from further representation of applicant. We ordered the cause filed and set in order to determine where lies the burden of counseling a defendant on his appellate rights. Rejecting the notion that it is on the judge of a trial court, and concluding that such responsibilities rest upon counsel unless and until he is granted leave to withdraw, we will grant relief.

"A lawyer's time and advice are his stock in trade." That classic axiom attributed to Abraham Lincoln provides guidance in our resolving the recurring problem presented by applicant.

The facts are that on or about March 18, 1980, after a jury found him guilty of aggravated robbery and the trial judge assessed punishment at confinement for a term of thirty-five years, applicant, by now an indigent he alleges, made known to his retained counsel that he desired to appeal and requested counsel to continue to represent him; applicant asserts that the trial judge asked his attorney whether he intended to take an appeal and counsel said he would; however, counsel testified that "[t]o the best of my recollection" he did not state in open court that he would represent applicant on appeal because "that would

have been tantamount to telling the Court ... that we were asking for an appeal;" having explained to applicant the process of an appeal and that it was so costly that counsel "was not financially able to support an appeal," he did not give notice of appeal after sentencing on May 1 since "I never intended to appeal;" there was "no need to file a motion to withdraw because I had concluded the case;" applicant, still in confinement, says he made attempts to contact counsel about his appeal but "received no reply." [1]

The judge of the convicting court found applicant was not deprived of his right to appeal in that "counsel did not tell him he would appeal his case." But that negative finding does not serve "to correct the ambiguity of representation which all too often follows a conviction," *Ward v. State*, 740 S.W.2d 794, at 797 (Tex.Cr.App.1987).

While such ambiguity of representation may not be created by "the conscious indifference of any particular party," *ibid*, appellate courts are well acquainted with the resultant confusion at the very point in the appellate process when certainty is imperative. See, e.g., *Shead v. State*, 711 S.W.2d 345, at 346 (Tex.App.—Dallas 1986) no PDR, and *Robinson v. State*, 661 S.W.2d 279, at 283 (Tex.App.—Corpus Christi 1983) no PDR. The right to a meaningful appeal is too valuable to be lost to inertia within the criminal justice system.

A solution to the problem proposed in some quarters is "to place the responsibility on the trial judge to advise the defendant at the proper time of his appellate rights, *whether he be represented by retained or court appointed counsel.* Teague, J., dissenting in *Ward v. State*, supra, at 803,[2] in agreement with Justice Countiss, concurring in *Ward v. State*, 704 S.W.

---

**1.** In its September 3, 1986, answer and reply to this application the State requested the judge of convicting court to order trial counsel "to file an affidavit ... responding to the allegations of ineffective assistance of counsel contained in the application." The judge entered such an order September 22, 1986, and the clerk immediately mailed it to counsel. Then followed seriatim: an October 28 motion by applicant "for default judgment" against counsel, which the court denied November 3; a December 17 show cause order that counsel appear January

8, 1987, with the affidavit previously ordered or show why he did not produce it; a precept directing an officer to serve that order; a second show cause order dated January 20, with precept, to appear January 23, 1987. Finally, on January 28, counsel testified in open court.

**2.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2d 903, at 905 (Tex.App.—Amarillo 1986), who in turn drew on *Robinson v. State,* supra, *viz:*

"... The trial judge should explain these [appellate] rights to the defendant in open court and the record should so reflect. *If counsel does not give notice of appeal in open court at the time of sentencing,* the trial court should explain to the defendant that notice of appeal must be given within fifteen days of sentencing. The trial court should admonish the defendant of the impcrtance of meeting the appellate deadlines."

*Robinson,* supra, at 283.

In addition, Justice Countiss would have the trial judge tell defendant of his right to appointed counsel if indigent and when material to be included in the appellate record must be designated. Further, he suggested this Court by rule, or the Legislature by statute, "require the giving of that information." With that, he concluded, "Then we can, with assurance, tell a defendant that the incomplete record is his mistake, from which there is no relief." *Ward,* 704 S.W.2d, at 905.[3]

The solution thus proposed is derived, at least in part, from Fed.R.Cr.Pro. 32(a)(2). Teague, J., dissenting in *Ward v. State,* supra, at 803. As pertinent here, it provides:

"(2) Notification of Right to Appeal. After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of the defendant's right to appeal, and the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in forma pauperis.... If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant."

As adopted in 1966, the rule substantially revised former rule 37(a)(2), which was conditioned on a defendant's being then unrepresented by counsel. According to Notes of Advisory Committee on Rules following Rule 32, the rationale for removing that condition includes certain considerations, *viz:*

"The court is required to advise the defendant of his right to appeal ... because situations arise in which a defendant ... is not adequately advised by such counsel of his right to appeal. Trial counsel may not regard his responsibility as extending beyond the time of imposition of sentence. The defendant may be removed from the courtroom immediately upon sentence and held in custody under circumstances which make it difficult for counsel to advise him."

At the time of sentencing in the instant cause applicant had ten days after it was pronounced in which to give or file notice of appeal. Former article 44.08(c).[4] From the record before us it appears that after his arrest applicant was confined without bail; but that he remained in custody upon being found guilty did not hamper counsel in explaining to applicant "the process of appeal," and during this period trial counsel and applicant had discussions, albeit briefly, about taking an appeal. Thus the first and third considerations for Federal Rule 32(a)(2) are not relevant here.

The attorney-client relationship continued. *Ward v. State,* supra, at 796–797. However, having informed applicant that an appeal is costly and he could not financially support one, counsel certainly regarded his responsibility did not extend to representing applicant for appellate purposes. Yet he did not inform the trial judge or seek leave to withdraw. So, to some degree the second reason for Federal Rule 32(a)(2) may be at work here.

---

**3.** This Court has not acted; the Legislature has, towit:

"An attorney appointed under this subsection shall represent the defendant until charges are dismissed, the defendant is acquitted, *appeals are exhausted,* or *the attorney is relieved of his duties by the court* or replaced by other counsel."

Article 26.04(a), V.A.C.C.P., as amended by Acts 1987, 70th Leg., Ch. 979, § 2, Vernon's Texas Session Law Service 6674.

**4.** Under our new appellate rules, within thirty days after sentence is imposed defendant may file a motion for new trial or must file a written notice of appeal.

Nevertheless, that the Federal authorities opted to transfer a duty or responsibility of an attorney to his client over to a trial judge is not sufficient reason for this Court to dictate the same requirement by rule of decision, especially when the Legislature has only recently provided otherwise. See note 3, *ante.* Rather than impose a state counterpart, our concentration should be on restating the role of a criminal defense lawyer in this kind of situation.

Precise obligations are laid out in ABA Standards Relating to the Adminis'.ration of Justice ("Standards"), The Defense Function, Part VIII. After Conviction. After sentencing, the lawyer explains to defendant "meaning and consequences" of the judgment and "his right to appeal." He expresses his professional opinion as to "meritorious grounds for appeal and as to probable results of an appeal," as well as its "advantages and disadvantages." "The decision whether to appeal must be the defendant's...." The lawyer "should take whatever steps are *necessary to protect* the defendant's right of appeal." § 8.2 Appeal, Standards, at 135.[5]

In Criminal Appeals, Part II. Transition from Trial Court to Appellate Court, 2.1 The Notice of Appeal, is written:

> (b) It is *appropriate* for courts imposing sentence in contested cases *to assume* the burden of advising the defendant that he has the right of review, that it must be exercised within a specified time, and that *he should promptly consult counsel in that regard.*

Standards, at 435.

■ Certainly, as we all recognize, for an unknowing defendant to learn of his appellate rights someone must advise him of them. But we are not persuaded that "in order to eliminate any question about whether the defendant received such advice ... the trial judge is best equipped to give that advice[.]" Teague, J., dissenting in *Ward v. State, supra,* at 802–803. Indeed, we are convinced that trial counsel is not

only the best source of such advice but also that it is his duty as an attorney to give it, to the end that his client gains a full understanding of relevant considerations in determining whether to pursue an appeal, as well as procedural requisites for giving notice of appeal and the like. *Ward v. State,* supra, at 797.

■ Representation by trial counsel does not terminate at end of trial—if that means when a jury has returned its final verdict on punishment. The sentencing proceeding is a critical part of trial, requiring assistance from trial counsel, and similarly thereafter the determination to give notice of appeal. Informing a defendant of his right to appeal is part and parcel of also further advising him along lines of the Standards, *ante,* at 373, in order to make a decision whether to take an appeal. Surely a judge is precluded from giving that kind of advice, and who better than an attorney who tried the case is qualified to assay and advise his client of probabilities of error? We indicated the answer in *Ward,* supra, and the Court answered that question and more in *Dyches v. State,* 382 S.W.2d 928 (Tex.Cr.App.1964), *viz:*

> "We are in accord with the view ... that trial counsel, having participated in the trial itself, is best qualified to prosecute an appeal and should not, without good cause, be permitted to withdraw from the case before the record on appeal has been perfected, if then."

*Id.,* at 929; accord: *Steward v. State,* 422 S.W.2d 733, at 737 and 738 (Tex.Cr.App. 1968).

Counsel is performing his duties in the trial court at the trial stage and in post conviction proceedings, including a motion for new trial, to notice of appeal. We have found it is not an amiable fiction that by giving notice of appeal trial counsel voluntarily becomes appellate counsel, emphasizing that "appointed trial counsel remains as the defendant's attorney *for all pur*

---

**5.** Formerly, § 8.3 Counsel on Appeal, provided: "*Trial counsel* ... should conduct the appeal ... *unless* new counsel is substituted by the defendant or the appropriate court." That language was later deleted because of 'considerable dis-

agreement" as to "the wisdom of this policy," in favor of a provision in 5–5.2 that counsel "continue throughout the trial court proceedings." Standards (Second Edition) Vol. 1 1986 Supplement 4.108, 5.53.

*poses* until he is expressly permitted to withdraw, even if the appointment was for the trial only." *Ward v. State*, supra, at 798. The Court said much the same for retained counsel in *Steel v. State*, 453 S.W. 2d 486 (Tex.Cr.App.1970):

> "When private counsel is engaged, no duty devolves upon the court to appoint counsel in criminal prosecutions. However, retained counsel, even one who has not been fully compensated for past services or compensated for future service, cannot bow out *without notice to the court* and the accused and 'frustrate forever accused's rights to protect his vital interests.' *Atilus v. United States* (5 Cir.) 406 F.2d 694)." [6]

■ Accordingly, we hold that at sentencing the judge of trial court has discretion, but not a duty or responsibility, to inform a defendant of his right to appeal and of other appellate matters to the extent deemed appropriate in the premises.

■ We also hold that trial counsel, retained or appointed, has the duty, obligation and responsibility to consult with and fully to advise his client concerning meaning and effect of the judgment rendered by the court, his right to appeal from that judgment, the necessity of giving notice of appeal and taking other steps to pursue an appeal, as well as expressing his professional judgment as to possible grounds for appeal and their merit, and delineating advantages and disadvantages of appeal. The decision to appeal belongs to the client.

■ While the former practice was orally to give notice of appeal in open court, it was permissible then—and now is mandatory under Tex.R.App.Pro. Rule 40(b)(1)—that notice be given in writing filed with the clerk of the trial court. But it was not then, and is not now, required that written notice of appeal be made by trial counsel, and thus "volunteer" to become attorney of record on appeal. "Such notice shall be sufficient if it shows the desire of the defendant to appeal from the judgment or other appealable order," *ibid;* cf. former article 44.08(a). A written notice of appeal signed solely by defendant is an indication that trial counsel "does not wish to pursue his client's appeal;" when complemented by a contemporaneously presented motion to withdraw showing good cause, and along the lines of DR 2–110(A), Texas Code of Professional Responsibility, and Tex.R.App.Pro. Rule 7, "the trial court is immediately placed on notice that appellate counsel must be appointed," *Ward v. State*, supra, at 797–798 —unless, of course, defendant has retained another attorney.[7]

■ In the instant cause, that retained counsel did not intend to handle the resultant appeal does not justify his failing to assist his allegedly indigent client in giving notice of appeal. Contrary to his assertion at the evidentiary hearing, "that ended my period of time with him," counsel did need to file a motion to withdraw because, knowing that applicant did indeed desire to appeal, in truth he had *not* "concluded the case." As we said in *Ward*, supra, at 799:

> "In the present case, the arguable limitation of representation for trial purposes only is not dispositive. Since appellant's trial counsel did not affirmatively withdraw, he remained appellant's counsel on appeal."

We find that in reality this presumptively indigent applicant did not receive any practical assistance of counsel in protecting and preserving his appellate rights. Thus he has been denied effective assistance of counsel on appeal in violation of his due process rights under the Fourteenth Amendment and his due course rights un-

---

**6.** The Court further noted that in *Atilus* the Fifth Circuit held that failure of retained counsel in a criminal case to perfect an appeal, when requested to do so by accused, "violated the requirement that the accused be afforded 'effective aid' at such vital or critical stage of the proceedings, in violation of the accused's constitutional rights." *Steel,* at 487.

**7.** Should there be an issue as to indigency, the judge may require withdrawing trial counsel to continue to serve through such indigency proceeding, and withhold signing an order granting leave to withdraw until that bit of business is done.

der Article I, § 10, of our own Bill of Rights. *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Ex parte Coleman*, 455 S.W.2d 209 (Tex.Cr. App.1970); see *Webb v. State*, 533 S.W.2d 780, at 783 (Tex.Cr.App.1976), and cases cited therein; see also generally, *Polk v. State*, 676 S.W.2d 408 (Tex.Cr.App.1984) (Concurring opinion, at 413–414).

Therefore, appellant is entitled to an out of time appeal, and that relief is granted.

The judgment in cause number 309325 in the 174th Judicial District Court of Harris County is vacated and the cause is remanded to that court with instructions to assure that applicant is represented by counsel and to permit applicant to give and file written notice of appeal, after which all further proceedings will be not inconsistent with this opinion, and applicable time limits prescribed by Texas Rules of Appellant Procedure shall be calculated from the day notice of appeal is filed.

It is so ordered.

ONION, Presiding Judge, concurring in part and dissenting in part.

The majority opinion by Judge Clinton and the opinion by Judge Teague (concurring and dissenting) deal with a non-issue in this cause.

This proceeding involves a post-conviction habeas corpus application brought under the provisions of Article 11.07, V.A.C.C.P.

Applicant, inter alia, contends that he was denied ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments in that his retained counsel did not give notice of appeal or perfect the appeal, as requested, and withdrew from the case without notice to him or to the trial court. He argues that such action deprived him of his appeal. He does *not* allege or claim that he had no knowledge of his appellate rights, and that it was the duty or responsibility of either his counsel or the trial court or both to inform him thereof, and that neither did so, and that he, as a result, forfeited his appeal. Such is a non-issue in this case. Further, the meager record was not devel-

oped along these lines. There is nothing in this record to show that counsel or the court did not in fact inform the applicant of his appellate rights. The applicant is entitled to relief on the issue he raised, not on the basis of a court created issue or issues found in an unauthorized advisory opinion.

Applicant was convicted of aggravated robbery in cause no. 309,325–A in the 174th District Court of Harris County in March, 1980. After the jury verdict, the court assessed punishment at 35 years imprisonment. No notice of appeal was given and the conviction became final.

Applicant, now confined in the Texas Department of Corrections, filed the instant habeas application in the convicting court as required by Article 11.07, supra.

In the sworn pro se handwritten habeas application and typed "memorandum in support of habeas corpus", applicant contends, inter alia, that he received ineffective assistance of counsel from his retained trial counsel. The main thrust of this contention is that he requested his attorney to give notice of appeal; that his attorney promised to give such notice; that at the time of sentencing, (March 31, 1980) in answer to the trial judge's inquiry as to an appeal, counsel told the judge he would prepare the "papers"; that counsel never gave notice of appeal, never requested to withdraw from the case and abandoned the case without notice to the applicant or the trial court; that several attempts to contact counsel resulted in "no reply from him." Applicant urges he was deprived of his appeal by the actions of his counsel. Applicant asserts he is indigent at this time.

In response to applicant's habeas application in the convicting court, the State filed a response that there were "controverted, previously unresolved facts material to applicant's confinement which require further investigation by the court." The State asked that the trial court order applicant's trial counsel to file an affidavit responding to the applicant's allegations of ineffective assistance of counsel. The court entered such order.

Great difficulty ensued in obtaining the requested affidavit. Finally, counsel appeared in open court and the assistant district attorney requested that sworn testimony be taken from counsel in lieu of the affidavit earlier sought. Applicant was not present, nor was he represented by counsel.

Counsel testified that he had indeed represented the applicant in the 1980 aggravated robbery case. The record also reflects:

"Q. Would you tell the Court what you did after Mr. Axel was convicted of aggravated robbery and in relation to appealing his case?

"A. I did not give notice of appeal because I never intended to appeal his case. *I explained to Clifton what the process of appeal was*, that it was a costly situation and that I was not financially able to support his appeal.

"Q. Did Mr. Axel specifically ask you to represent him on appeal?

"A. If I remember correctly, that's about the way that it went.

"Q. And do you remember whether or not you specifically told him you would not represent him on appeal?

"A. Oh, yes, *I did explain to him that I would not represent him on appeal.*

"Q. Did you ever state to the court in open court that you would represent Mr. Axel on appeal?

"A. To the best of my recollection I did not because I feel if I had, that would have been tantamount to telling the court that I would address the court to the fact that we were asking for an appeal.

"Q. So it is your testimony that you never told Mr. Axel you would represent him on appeal but then turned around and failed to do anything for him?

"A. I don't see where there was any failure because *I never told him that I was going to represent him on appeal.*

"Q. Do you know whether or not he understood that?

"A. I feel reasonably certain that he understood it.

\* \* \* \* \* \*

"Q. Mr. Axel also states that you never filed any type of a motion with the court. Would you say to the court that you essentially were leaving this case, you were not going to handle his appeal?

"A. At the point in time that Mr. Axel was found guilty that ended my period of time with him. I had no need to file a motion to withdraw because I had concluded the case.

"Q. *And Mr. Axel understood that you were not going to represent him on appeal?*

"A. *I told him that.*

"Q. Were you retained or appointed, Mr. Jackson?

"A. Retained." (Emphasis supplied.)

Before the district judge of the convicting court was the sworn habeas application and the testimony of trial counsel. In his findings, the judge, who was the trial judge, found that counsel did not tell applicant that he would represent applicant on appeal and that "applicant was not deprived of his right to an appeal." It was recommended to this Court that relief be denied.[1] The record was forwarded to this Court.

It is observed again that at no time has applicant alleged or claimed that he was deprived of his appeal because he lacked knowledge of his right of appeal or appellate procedures and that no one informed him of his rights. He does not assert that the trial judge had a constitutional, statutory or other duty to admonish and inform him of his right of appeal and procedural

---

1. The court further found that counsel "did contact and attempt to bring to court the various witnesses the applicant complains of." In the second of two contentions applicant alleged counsel failed to contact alibi witnesses whose names and addresses were given him. The witnesses were not named. Counsel testified one of the witnesses was applicant's sister who testified, that another was a Mrs. Washington, who promised on the day of trial to come to court but didn't show, and the other was a "Clifton Axel look-alike," and that a great deal of time was spent in the neighborhood where the young man was supposed to have lived, that a vehicle supposedly his was located, but the person was never found.

steps, and that the judge did not do so, nor does he claim his attorney had such duty but did not do so.[2] What he does allege and claim is that he knew of his right of appeal and asked his retained counsel to give such and appeal his conviction, and that counsel promised to do so but did not, and that counsel withdrew without notice to him or the trial court.

When the matter was presented to this Court an order was entered on April 22, 1988, to file and set for submission "to make the determination whether the trial court must admonish the defendant of his right of appeal." The Court was misled for such issue is not presented by this cause.[3] In the majority opinion the issue is altered again "to determine where lies the burden of counseling a defendant on his appellate rights."

Since these issues were not raised by applicant no evidence was developed on the same. The "file and submit" order was improvidently entered and the majority displays a lack of judicial discipline to write and decide a non-issue from an undeveloped record regardless of how dear to the heart the non-issue may be to some judges.

The majority opinion states:

"... We hold that at sentencing the Judge of the trial court has discretion but not a duty or responsibility, to inform a defendant of his right of appeal and of other appellate matters to the extent deemed appropriate in the premises.

"We also hold that trial counsel, retained or appointed, has the duty, obligation and responsibility to consult with and fully to advise his client concerning meaning and effect of the judgment rendered by the court, his right of appeal from that judgment, the necessity of giving notice of appeal and taking other steps to pursue an appeal, as well as expressing his professional judgment as to possible grounds for appeal and their merit, and delineating advantages and disadvantages of appeal. The decision to appeal belongs to the client."

These are gratuitous "holdings." There is nothing in this record to show that the trial judge and counsel did not do what is "recommended." Applicant does not claim otherwise. Even if one agrees with such "holdings" they were not called for in the instant case. Appellate judges should avoid seizing upon just any case as a vehicle to write on favorite subjects or whatever may tickle their fancy. I dissent to the action of the Court in doing so and in rendering an advisory opinion.

However, I agree that applicant is entitled to the relief on the issue he does raise. Applicant claims that he told counsel he wanted to appeal. Counsel agrees that applicant did. Applicant alleges counsel promised to give notice of appeal but did not, and in fact withdrew from the case without notice to him or permission from the court. Counsel, who was retained for trial, stated that he told applicant that he would not represent him on appeal, and that applicant understood; that he did not give notice of appeal because he did not intend to appeal the case. Counsel did not file a motion to withdraw from the case because he felt that he had concluded the case in accordance apparently with his agreement or contract, as retained counsel, with the applicant. The trial court was made aware of the situation. Whether at that time applicant was indigent and without funds is not clearly reflected by this record.[4]

---

2. Counsel testified he explained "the process of appeal" to applicant.

3. The State's brief referred to in Judge Teague's opinion was filed only after the order was entered changing the issue raised in this cause.

4. It is undisputed that the applicant was represented at trial by retained counsel. The majority in reciting the facts states that at the time of the 1980 conviction applicant was "by now an indigent he alleges" and later refers to "this presumptively indigent applicant," whatever that term is supposed to mean, given this record. Judge Teague in his opinion refers to "applicant, who was indigent when he was sentenced...." Nowhere in his habeas application does applicant allege he was indigent at the time of his conviction and at the time he was sentenced. In his "memorandum" he states "... the defendant could not afford to pay the Hon. Thomas Jackson any longer because he was now in costody (sic) of the Sheriff's Dept. Harris

From the undisputed evidence, we know that counsel here knew that applicant wanted to appeal but he gave no notice of appeal for the applicant, nor indicated to the trial court of applicant's desires in this regard, nor did he request permission from the court to withdraw from the case. He simply abandoned the applicant at a critical stage of the proceedings. This he cannot do whether he be appointed or retained as counsel. See *Steel v. State*, 453 S.W.2d 486 (Tex.Cr.App.1970); *Atilus v. United States*, 406 F.2d 694 (5th Cir.1969); *Ward v. State*, 740 S.W.2d 794, 798 (Tex.Cr.App. 1987). See also *Ex parte Raley*, 528 S.W. 2d 257 (Tex.Cr.App.1975); *Ex parte Hill*, 528 S.W.2d 259 (Tex.Cr.App.1975).

Applicant is entitled to the relief he seeks —an out of time appeal. Thus I concur in the result reached, but express my alarm at the manufacturing of issues and the lack of judicial discipline demonstrated in this cause.

TEAGUE, Judge, concurring and dissenting.

In *Martin v. Texas*, 737 F.2d 460 (5th Cir.1984), also see *Martin v. Texas*, 694 F.2d 423 (5th Cir.1982), the Fifth Circuit Court of Appeals, in a case that involved a defendant from Texas who had been convicted of capital murder but whose punishment had been assessed at life imprisonment instead of death, because the jury answered one of the special issues submitted to it pursuant to Art. 37.071, V.A.C. C.P., in the negative, stated the following, notwithstanding that trial counsel had been retained only to represent the defendant at his trial and apparently through sentencing, but not beyond that point in the proceedings:

It is now settled law [in this circuit] that the failure of [trial] counsel to advise a defendant of his right to appointed counsel on appeal *if indigent* amounts to ineffective assistance. (Citations omitted.) (My emphasis.) This is true whether the defendant's attorney is retained or appointed. (Citations omitted.) (462).

Thus, given the express wording of the holding, it appears to me that this holding is limited just to indigent defendants, and that the retained attorney must have been aware that the defendant was in fact indigent before he is required to admonish the defendant about his appellate rights.

The facts that are set out in *Martin*, supra, reflect that retained trial counsel discussed at length with the defendant an appeal, but strongly urged that no appeal take place because he feared that if the defendant appealed his conviction for capital murder and his life sentence, and this Court granted him a new trial, the State might be able to thereafter successfully retry the defendant for capital murder and the jury might answer the special issues submitted to it in the affirmative, thus requiring the trial judge to sentence the defendant to death. Counsel expressly told the defendant that given these circumstances he was not going to give notice of appeal or represent him on any appeal, and he didn't do either one.

In *Martin*, supra, the Fifth Circuit found that retained counsel failed to advise his client that because he was then indigent he was entitled not only to the services of court appointed counsel but to a free record as well. The Fifth Circuit granted the defendant Martin relief, by affirming the federal district court's decision to grant him an out-of-time appeal.

The Fifth Circuit in *Martin*, supra, albeit implicitly, also placed the legal duty and responsibility on the trial judge, where the trial judge was aware that the defendant

---

County Jail, and was sentenced to confined (sic) in The Texas Department of Corrections...." The docket sheet reflects that applicant was in jail and "no bond" was permitted. The fact that a defendant is held without bail, legally or illegally, does not automatically transform him into an indigent nor does a qualified claim of inability to pay because of custody. Applicant's trial counsel testified he explained to applicant

that "... I (attorney) was not financially able to support his appeal." In his memorandum applicant faults his counsel for failing "to give notice to him and the court he was not paid to handle his clint (sic) appeal, and was not going to handle it on appeal." Whether applicant was indigent at the time of conviction is actually immaterial because of counsel's actions in abandoning him.

was indigent, to advise or admonish the defendant at his sentencing about his appellate rights, regardless of whether court appointed trial counsel had already admonished the defendant about his appellate rights.

Given the above, it appears that the above holdings in *Martin v. Texas*, supra, are limited just to indigents.

This Court's majority opinion by Judge Clinton adopts in principle what the Fifth Circuit has already held in *Martin*, supra, as far as retained counsel being requi.ed to admonish his now indigent client goes, but, by not expressly limiting its holding just to indigents, implicitly, if not expressly, expands what the Fifth Circuit stated and held in *Martin*, supra, to include *all* defendants, regardless of whether or not they are indigent.

We ... hold that trial counsel, retained or appointed, has the duty, obligation and responsibility to consult with and fully to advise his client concerning meaning and effect of the judgment rendered by the court, his right to appeal from that judgment, the necessity of giving notice of appeal, as well as expressing his professional judgment as to possible grounds

for appeal and their merit, and delineating advantages and disadvantages of appeal. The decision to appeal belongs to the client. (Page 374.)

To this part of the majority opinion I concur. However, because the majority opinion fails and refuses to place a like duty on the trial judge, I am compelled to dissent.[1]

Given the record before us, it is clear to me that applicant's retained trial attorney, after being advised by applicant after sentencing that although he was able to afford counsel for his trial, he was unable to afford to employ counsel for the appeal, and, albeit implicitly, also unable to afford to pay for the record of appeal, did not advise the indigent applicant of his appellate rights when applicant was sentenced. Given our facts, and the Fifth Circuit's decision of *Martin v. Texas*, supra, and the cases cited in *Martin*, supra, applicant, who was obviously indigent when he was sentenced, because he was not admonished by his retained trial attorney about his appellate rights, is clearly entitled to be granted an out-of-time appeal by this Court even though the pertinent events took place over eight years ago.[2]

---

1. Presiding Judge Onion, in his "Opinion concurring in part and dissenting in part," laments and wails that the majority opinion by Judge Clinton addresses "non-issues in this case"; that the majority of this Court, which, after almost 8 years on the Court, I find is impossible to do, has been "misled"; that the majority of this Court "displays a lack of judicial discipline"; that the majority opinion writes on a "subject" that is only "dear to the heart ... of some judges", or, to put it another way, a majority of this Court writes on "favorite subjects or whatever may tickle their fancy"; and that the majority opinion is nothing less than an advisory opinion. Although I, for one, will confess that the subject of who should admonish a defendant about his appellate rights does "tickle my fancy", nevertheless, given the importance of the subject, the fact that the record is sufficiently perfected to discuss the subject, and especially given the fact of the number of out-of-time appeals that this Court has been granting in recent times, I totally and wholly disagree with all of Presiding Judge Onion's criticisms, notwithstanding that I do agree with his implicit suggestion that, as it did between September 1, 1987, and August 31, 1988, *in at least 62 cases*, this Court could have "whipped out" and "sent down" another "unanimous per curiam form opinion" granting the defendant an out-of-time

appeal. When the decision was made to "file and set" this cause to discuss the subject, who should admonish the defendant about his appellate rights, I, for one, as apparently at least a majority of this Court also did, concluded that the time had arrived for this Court to discuss the subject of who should admonish the defendant about his appellate rights. I pause to point out, because this Court is a democratic institution, that if at any time after this Court ordered this case "filed and set" to discuss that subject, it would have been a very simple task for a majority of this Court to vote to "unfile and unset" this cause, and enter another order to the effect, "file and set and hand down on the same day another unanimous form per curiam opinion granting the defendant in this cause an out-of-time appeal", but it didn't and it hasn't chosen to vote to do that.

My disagreement with the majority opinion by Judge Clinton is not with what he states and holds; it is simply that he does not go far enough in his opinion; in particular, he does not put the same duty that he puts on trial counsel on the trial judge to admonish a defendant about his appellate rights.

2. I pause to point out that our procedure today that governs what must take place after a de-

It appears to me that this Court can, and should at the first opportunity, enact and place in the *Rules of Appellate Procedure* the rule that it adopts today that is applicable either to court appointed or retained trial counsel. A like rule can and should be enacted and also placed in the *Rules of Appellate Procedure* that would be applicable to trial judges who have jurisdiction over felonies and misdemeanor "jail house" offenses. See and compare Rule 32(a)(2),

*Federal Rules of Criminal Procedure.* Also see and compare *Walters v. Harris,* 460 F.2d 988 (4th Cir.1972), cert. denied, 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262 (1973).

My quarrel with the majority opinion is only with its holding that "at sentencing the judge of trial court *has discretion, but not a duty or responsibility,* to inform a defendant of his right to appeal and of other appellate matters to the extent

fendant is found guilty and punished, in order to perfect an appeal, is far different from the time when applicant was found guilty, assessed punishment, and sentenced over eight years ago. Under the majority opinion, when is trial counsel supposed to admonish the defendant about his appellate rights? Before sentencing? After sentencing? If a motion or amended motion for new trial is filed, after the trial judge overrules the motion for new trial?

Notwithstanding the fact that the majority opinion does not expressly require that the trial judge be implicated in the process, but given the fact that its express holding is not limited just to indigent defendants, I find that it does take one giant step for *all* defendants.

One major fault I find that the majority opinion has is that on page 374 it appears to give the impression that, when it comes to retained counsel, this has always been one of this Court's rules. However, until the Supreme Court held in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), that there was no distinction between court appointed and retained counsel, as far as being effective counsel, this Court had long held that "In those cases where the court selects and appoints the attorney who represents an accused, this Court reviews carefully the competency of the attorney. Where the accused selects his own attorney, such review is not so searching. *Rodriguez v. State,* Tex.Cr.App., 170 Tex.Cr.R. 295, 340 S.W.2d 61." *Cleaver v. State,* 498 S.W.2d 945, 947 (Tex.Cr.App.1973). And this rule was carried over to appeals. However, this Court did have the rule, apparently adopted from what the Fifth Circuit had stated and held in its decisions, that when the defendant was indigent, even though represented at trial by retained counsel, if he made known or indicated *to the trial judge* at the proper time of his indigency, and of his desire to appeal his conviction, the trial judge was required to inform the defendant of his right to a "free" appellate record and to be represented by court appointed counsel. See, for example, *Simmons v. State,* 511 S.W.2d 308, 311 (Tex.Cr.App.1974). As far as my research reflects, that was the only exception. Thus, in this State, the rule that previously existed was that a defendant who was represented at trial by retained counsel, if he did not communicate to the trial judge the fact that he was then indigent, even when he communicated this fact to his

retained trial attorney, provided that the attorney did not engage in fraud or deceit to deprive the defendant of his appeal, until he went to federal court he did not get an appeal. It appears that it was the Fifth Circuit's decision of *Atilus v. United States,* 406 F.2d 694 (5th Cir. 1969), that was the foundation for the rule stated above in *Martin v. Texas,* supra, which firmly laid down the requirement that retained trial counsel must abmonish an indigent defendant about his appellate rights. Thus, this Court's members deceive themselves if they believe that today's decision is some sort of land mark decision in this area of the law. Furthermore, I believe that if one will take the time to carefully read *Ward v. State,* 740 S.W.2d 794 (Tex.Cr.App. 1987), upon which the majority opinion so heavily relies, he will find as I have that *Ward* is clearly factually not on point with the facts of this cause. Given what this Court stated and held in *Pannell v. State,* 666 S.W.2d 96 (Tex.Cr. App.1984), that this State's Disciplinary Rules of the Code of Professional Responsibility are not laws of this State, and thus unenforceable in this Court, I am unable to understand how the majority opinion can rely so heavily upon something recommended by the American Bar Association, as it does. If one carefully reads the provision of Art. 26.04(a), V.A.C.C.P., upon which the majority opinion also relies, I believe that he will easily see as I have that that statute does not cover the factual situation at Bar. If one will also take the time to carefully read *Dyches v. State,* 382 S.W.2d 928 (Tex.Cr.App. 1964), and *Steward v. State,* 422 S.W.2d 733 (Tex.Cr.App.1968), upon which the majority opinion relies, he will easily see as I did that those cases are not factually on point with the facts of this cause. In fact, I have not yet found any authority that the majority opinion cites, outside of one Fifth Circuit decision, that even comes close to being on point factually with the facts of this cause. Given the above, it is apparent to me that the majority opinion is terribly lacking in authoritative support for anything that it states and holds. Notwithstanding what I have just stated, I do find that the majority opinion constitutes one giant step for all defendants by formally and expressly requiring that someone admonish a convicted defendant about his appellate rights.

deemed appropriate in the premises." (Page 374.) I find that the duty to admonish a defendant about his appellate rights should be placed on both trial counsel and the trial judge, and not just trial counsel. There are several valid reasons for my position.

First, this Court's records reflect or indicate that a substantial majority of our felony trial judges and our misdemeanor "jail house" judges are already admonishing defendants at sentencing about their appellate rights. Even Hon. Deborah S. Williams, the Assistant District Attorney of Harris County who represents the Great State of Texas in this cause, agrees that requiring all such trial judges to admonish all defendants at sentencing about their appellate rights would not unduly add to their present tasks that they must perform.

Second, this Court's records reflect or indicate that court clerks come and go, but docket sheets usually remain forever. How many attorneys are there, however, who keep their files forever? How many attorneys are there, even after today, who will maintain a record forever reflecting that they admonished the defendant about his appellate rights?

When this Court is given the opportunity to prevent relegating an issue of fact to a swearing match, it should do so.

I agree with the majority opinion that retained or court appointed counsel should admonish his client about his appellate rights.

I respectfully dissent to the majority opinion's failure to also place this legal duty on the trial judge.[3]

Thus, I concur and dissent.

3. Given what the majority opinion states and holds, I believe that it will be the wise retained trial attorney, whose contract of employment terminates upon sentencing, or when punishment is assessed, and he does not intend to remain on the case after that point in the proceedings, who will prepare a preprinted fill-in-the blanks motion to withdraw from the case, with an attached order granting him permission to withdraw from the case at that time, present same to the trial judge, after filling in the blanks, and have the trial judge sign the order granting him permission to withdraw. Of course, the defendant should be present when counsel presents his motion to withdraw to the trial judge. As to what counsel should do if the trial judge refuses to permit him to withdraw from the case, other than give the trial judge a copy of that provision found in Article I, § 10, of the Federal Constitution, which proscribes States from passing any law that "impairs the obligation of contracts", and being principled enough to go to jail for contempt of court, I am unable to say at this time. If the trial judge grants retained counsel's motion to withdraw, and signs the order, I believe that wise retained counsel will also be prepared at that time to file with the clerk of the court a preprinted fill-in-the blanks type form, with the blanks filled in, assuming that he has already done so, stating therein that he has "Axelized" the defendant about his appellate rights, by stating that he has admonished the defendant about all of the subject matter contained on 374 of the majority opinion, sign same, and attach thereto a certificate of service stating that a copy of same has been served on the defendant, by hand delivering a copy of same to the defendant on that date. It appears that the following "Axel" admonishment should be sufficient:

TO WHOM IT MAY CONCERN:

I, the undersigned, have this date admonished and advised the defendant that I do not intend to represent him on any appeal of his case. I have also admonished and advised the defendant of the meaning and effect of the judgment rendered by the trial court, and his right to appeal from that judgment, the necessity of filing timely written notice of appeal with the clerk of the trial court, and the steps he must take in order to perfect any appeal. I have also admonished and advised him as to possible grounds for appeal and their merit. I have further delineated the advantages and disadvantages of an appeal. After so admonishing and advising the defendant, I asked him if he understood what I had just told him, and he replied in the affirmative, both orally and with a nod of the head in the affirmative. During all of this time the defendant appeared to me to be fully mentally competent.

I did all of the above on this the _ _ day of ———, A.D., 19—.

_____
Attorney at Law