

# In the Court of Criminal Appeals of Texas

No. WR-96,247-01

## EX PARTE AIRTON MOSQUERA,

### *Applicant*

On Application for a Writ of Habeas Corpus
Cause No. CR-20-2433-E-WHC1 in the 453rd District Court
From Hays County

YEARY, J., filed a dissenting opinion in which SCHENCK, P.J., and PARKER and FINLEY, JJ., joined.

I agree that the Court acted properly by granting rehearing in this case. But the Court's new opinion, in my view, is still flawed. The cursory language adopting the convicting court's Findings of Fact and Conclusions of Law leaves unanswered questions. First, given that Applicant raised multiple grounds for relief, it is unclear on what basis the Court grants Applicant a new trial. Second, given this Court's

inconsistency as to what relief an applicant might be entitled to on these claims, it is unclear *why* Applicant is receiving a new trial.

For my part, I am concerned that granting a new trial in these situations places applicants at risk, if found guilty, of receiving a term of confinement longer than they originally received when all they have shown themselves to have actually been denied is the opportunity to be considered for shock probation. Likewise, even if only a new punishment proceeding was granted, a new judge might evaluate the situation differently and impose a greater sentence. So, to avoid those potential adverse results for applicants, the more appropriate remedy when an individual is denied their ability to be considered for shock probation is simply to grant an out-of-time opportunity to pursue a motion for shock probation.

## I. BACKGROUND

Applicant pled guilty to robbery and was sentenced to confinement for ten years. But he did so with the understanding that his counsel would file a motion for shock probation. The motion was never filed. Subsequently, he filed this application for a writ of habeas corpus in the county of conviction. The district clerk forwarded it to this Court. *See* TEX. CODE CRIM. PROC. art. 11.07.

Applicant raised two grounds for relief. First, he asserted that his plea was involuntary "because it was made with the understanding that he would receive shock probation" upon the completion of an "initial period of incarceration." Second, he argued that he "was denied the effective assistance of counsel when his attorney failed to file a motion for shock probation. According to the record before us, counsel was

aware that a post-plea filing was required to assure that Applicant would have the opportunity to be considered for shock probation. And, still, defense counsel failed to file the appropriate motion—a clear case of ineffective assistance.

## II. APPLICANT'S PLEA WAS NOT INVOLUNTARY

Applicant is not entitled to relief on his first claim on habeas because his plea was not involuntary. A plea is not retroactively rendered involuntary when counsel fails to take a particular action only *after* the plea is entered. *See Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997).

In *Ex parte Morrow*, this Court described the limited instances in which relief is proper based on an involuntary plea claim premised on an allegation of ineffective representation by a defendant's counsel. *Id.* There, the Court explained that, "[w]hen a defendant enters his plea upon the advice of counsel and subsequently challenges the voluntariness of that plea based on ineffective assistance of counsel, the voluntariness of such plea depends on (1) whether counsel's *advice* was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty[.]" *Id.* (citing *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)) (emphasis added). The analysis focuses on the competency of counsel's advice, which is necessarily limited to counsel's performance prior to the plea. Notably, then, if the alleged ineffectiveness of counsel occurs only *after* the plea is entered, involuntary plea is not the proper claim to be pursued or the proper rationale for granting relief.

Additionally, the notion that an unfulfilled promise necessarily renders a plea involuntary is flawed. *Puckett v. United States*, 556 U.S. 129, 137–38 (2009). To illustrate, in *Puckett v. United States*, the Supreme Court of the United States likened a plea agreement to a contract. *Id.* at 137. Specifically, it stated that "there is nothing to support the proposition that the Government's breach of a plea agreement retroactively causes the defendant's agreement to have been unknowing or involuntary." *Id.* Just as a breach of contract does not automatically render "the other party's promise to have been coerced or induced by fraud[,]" a breach of a plea agreement does not render the plea involuntary. *Id.* The Court did not quibble: "In any case, it is entirely clear that a breach does not cause the guilty plea, when entered, to have been unknowing or involuntary." *Id.* Indeed, "[i]t is precisely because the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain." *Id.* at 137–38.

Moreover, in *Puckett*, the appellant specifically argued that the United States Supreme Court had approved of an unfulfilled-promise rationale as the basis for an involuntary plea. *Id.* at 138, n.1. That argument stemmed from the Court's decision in *Brady v. United States*, where the Court approvingly quoted a Fifth Circuit opinion that suggested a plea might be involuntary if it was induced by "misrepresentation (including unfulfilled or unfulfillable promises)[.]" *Brady v. United* States, 397 U.S. 742, 755 (1970) (quoting *Shelton v. United States*, 246 F.2d 571, 572, n. 2 (5th Cir. 1957) (en banc)). But the Court explicitly rejected that idea, explaining that "it is hornbook law

that misrepresentation requires an intent *at the time of contracting* not to perform." *Puckett*, 566 U.S. at 138 n.1. (citing 23 R. Lord, Williston on Contracts § 69.11 (4th ed. 2002)).

And it seems that this Court's early suggestion that an attorney's failure to move for shock probation might render an applicant's plea involuntary predated *Puckett*. *See Ex parte Davis*, No. AP-76,039, 2008 WL 5049936, at *1 (Tex. Crim. App. Nov. 26, 2008) (per curiam) (not designated for publication). In *Ex parte Davis*, which was decided the year before the U.S. Supreme Court decided *Puckett*, this Court concluded that an applicant's plea "was rendered involuntary due to the failure to timely file a motion for shock probation." *Id.* Notably, though, this Court's unpublished decision in *Davis*—which cited no precedent for granting relief—did not benefit from *Puckett*'s rather clear explanation that a plea agreement is not retroactively rendered involuntary when a breach occurs after the fact.[1] *Id.*

Here, counsel's plea advice and plea representation were

---

[1] Even after *Puckett*, this Court has continued to grant relief in cases like these on the basis of the fiction that there has been an involuntary plea—relying (without explanation) on *Brady v. United States* and *Hill v. Lockhart*. *See, e.g.*, *Ex parte Manning*, No. WR-96,034-02, 2024 WL 4833839, at *1 (Tex. Crim. App. Nov. 20, 2024) (per curiam) (not designated for publication) (citing *Brady*, 397 U.S. at 742); *Ex parte Miles*, No. WR-95,871-02, 2024 WL 4447413, at *1 (Tex. Crim. App. Oct. 9, 2024) (per curiam) (not designated for publication) (citing *Lockhart*, 474 U.S. at 52). But reliance on *Brady* in these situations was squarely foreclosed by *Puckett*. Also, *Lockhart* examined pre-plea ineffectiveness—not post-plea ineffectiveness. *Lockhart*, 474 U.S. at 56 ("[P]etitioner relies entirely on the claim that his plea was 'involuntary' as a result of ineffective assistance of counsel because his attorney supplied him with information about parole eligibility that was erroneous."). Accordingly, it is unclear why the Court continues to rely on those cases to support decisions to grant relief on the ground that there has been an involuntary plea.

competent—she secured Applicant the opportunity to move for shock probation free of the State's opposition. The problem only arose because counsel subsequently failed to follow through with her own obligation to timely seek shock probation. This failure—as the Supreme Court of the United States has explained—simply "does not cause the guilty plea, *when entered*, to have been unknowing or involuntary." *Id.* at 137 (emphasis added). Because counsel's advice and representation prior to and leading up to the entry of Applicant's plea were competent, Applicant's plea was not involuntary due to ineffective assistance of counsel.[2]

To the extent that this Court has previously suggested that an unfulfilled promise renders a plea involuntary, those decisions run contrary to *Puckett* and should be rejected. It bears repeating that the court seems to have begun this practice—without explanation—before *Puckett* was decided. When a breach occurs due to a subsequent-to-the-plea failure to uphold a professional obligation, rather than a misrepresentation at the time of the agreement, the plea is not involuntary. The Court should finally and clearly acknowledge that.

### III. APPLICANT'S COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE

Applicant *is* entitled to relief on his second claim on habeas—that

---

[2] The convicting court, in its Conclusions of Law relating to Ground One, cites *Ex parte Bittikoffer* for the notion that Applicant is entitled to relief based on an involuntary plea due to ineffective assistance of counsel. 802 S.W.2d 701 (Tex. Crim. App. 1991). But *Bittikoffer* did not address a claim of involuntary plea on the basis of ineffective assistance of counsel. *See id.* at 702 (noting that the attorney was not at fault for the trial court's loss of jurisdiction). So, the habeas court's reliance on *Bittikoffer*—in the context of involuntary plea due to ineffective assistance of counsel—is misplaced.

his counsel was constitutionally ineffective. *See, e.g.*, *Ex parte Leslie*, No. 74,802, 2003 WL 22349049, at \*1 (Tex. Crim. App. Oct. 15, 2003) (per curiam) (not designated for publication) (granting relief on the basis on ineffective assistance of counsel when trial counsel "failed to timely file an application for shock probation and did not inform her of his inability to file the application so as to permit her to obtain alternate counsel"). Generally, under *Strickland v. Washington*, an applicant must show that counsel's performance was deficient and that—but for that deficient performance—there is a "reasonable probability" that the outcome would have been different. 466 U.S. 668, 694 (1984); *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005). But with respect to post-conviction performance, when counsel's deficient performance entirely deprives a defendant of a proceeding, prejudice is shown, and the defendant has a viable ineffective assistance of counsel claim. *Cf. Roe v. Flores-Ortega*, 528 U.S. 470, 484–85 (2000) ("[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."); *Miller v. State*, 548 S.W.3d 497, 499 (Tex. Crim. App. 2018) ("[I]f the deficient performance might have caused the waiver of a proceeding, the defendant's burden is to demonstrate a reasonable probability that the deficient performance caused the defendant to waive a judicial proceeding that he was otherwise entitled to have.").

Here, counsel was deficient for failing to file the motion for shock probation that Applicant rightly anticipated. But for that failure, Applicant would have had an opportunity to be considered for shock

probation. In accordance with his plea bargain, he was entitled to have the possibility of shock probation be considered by the convicting court.[3] In short, Applicant deserves relief.

## IV. THE PROPER REMEDY

But, what is the *proper* remedy? Without citing any authority, the Court's terse opinion grants Applicant a whole new trial. Majority Opinion at 1–2. But the Court should explain its rationale because it has been inconsistent on cases like this one in the past. *Compare Ex parte Ulibarri*, No. AP-75,773, 2007 WL 2852162, at *1 (Tex. Crim. App. Oct. 3, 2007) (per curiam) (not designated for publication) (granting an applicant a new punishment hearing when counsel failed to timely present a motion for shock probation), *with Ex parte Medina,* No. AP-75,859, 2008 WL 644059, at *1 (Tex. Crim. App. Mar. 5, 2008) (per curiam) (not designated for publication) (granting a new trial when counsel failed to present a timely motion for shock probation). Within the span of just over five months, two applicants received starkly different remedies.[4] *Id.* One received a new punishment hearing, *Ulibarri*, 2007 WL 2852162, at *1, and the other received an entire new trial. *Medina,* 2008 WL 644059, at *1.[5] The Court should address the

---

[3] The convicting court goes so far as to explicitly find that it would have granted the motion and placed Applicant on community supervision.

[4] In both of these cases, the convicting court recommended relief in the form of an out-of-time opportunity to be considered for shock probation.

[5] Admittedly, in our original opinion in the present case, we failed to fully wrestle with this issue, and that is why I agree that granting rehearing and withdrawing our prior opinion is the proper course of action.

discrepancy.[6]

## A. New Trial or New Punishment Presents Problems

While a new trial *might be* one way to address Applicant's situation, it is not required. *Puckett*, 556 U.S. at 137. In *Puckett*, the Supreme Court of the United States noted that, when certain "obligations are not met, the defendant is entitled to seek a remedy, which might in some cases be rescission of the agreement, allowing him to take back the consideration he has furnished, *i.e.,* to withdraw his plea." *Id.* But it also clarified that "rescission is not the only possible remedy;" sometimes, the proper remedy is requiring the obliged party to "fully comply with the agreement—in effect, specific performance of the contract." *Id.* (citing *Santobello v. New York*, 404 U.S. 257, 263 (1971)).

For my part, with respect to the propriety of granting a new trial, I am concerned that a new trial or a new punishment phase might place some applicants at risk of receiving a term of confinement longer than they originally received. An applicant might not even perceive the possibility of a greater sentence when pursuing a claim for deprivation of a proceeding permitting a trial court to consider granting shock probation. While due process prevents a trial judge from vindictively increasing the range of punishment, it is entirely possible that a new judge, or jury, might evaluate a case differently in the subsequent

---

[6] Recently, the Court's trend has been to grant relief on the basis of involuntary plea, which necessarily demands unraveling the plea. *See, e.g.*, *Ex parte Manning*, 2024 WL 4833839, at \*1. But, as previously explained, the pleas in these cases are not rendered involuntary because counsel fails to move for shock probation. *See ante* Part II. So, the Court should correct its course and examine what remedy applicants are entitled to under the appropriate ground for relief—ineffective assistance of counsel.

proceedings and thus impose a greater punishment than Applicant originally received. *See Texas v. McCullough*, 475 U.S. 134, 138–44 (1986) (explaining that the imposition of a higher sentence on a retrial is not always vindictive). Surely, that is not the "relief" that applicants want when they have approached the Court only because they have been denied an opportunity to move for shock probation. And we should avoid creating the potential for applicants to be subjected to that risk—even when, as here, they ask for it.

## B. An Opportunity for Shock Probation is Appropriate

Typically, when a trial or appellate counsel's post-conviction performance is constitutionally ineffective—depriving a defendant of a procedure that he would otherwise be entitled to—the proper remedy is to allow a defendant to pursue that procedure. *Cf. Ex parte Daigle*, 848 S.W.2d 691, 692 (Tex. Crim. App. 1993) ("The proper remedy in a case such as this is to return the Applicant to the point at which he can give notice of appeal."). For example, in *Ex parte Axel*, the Court held that a defendant's trial counsel was constitutionally ineffective for failing to give notice of appeal. *Ex parte Axel*, 757 S.W.2d 369, 374–75 (Tex. Crim. App. 1988). The Court decided that the appropriate remedy for counsel's failure was the opportunity to pursue an out-of-time appeal. *Id.* at 375. Likewise, in *Ex parte Crow*, when appellate counsel failed to inform a defendant of his right to file a petition for discretionary review, the Court "granted leave to file an out-of-time petition for discretionary review." *Ex parte Crow*, 180 S.W.3d 135, 139 (Tex. Crim. App. 2005).

Here, because trial counsel's ineffectiveness occurred post-conviction, the most appropriate remedy would be to address the post-

conviction problem that he actually seeks to remedy—to grant Applicant an opportunity to pursue the proceeding that he was deprived of—affording him an out-of-time motion for shock probation. He bargained for an opportunity to be considered for shock probation, but he did not receive it. Like *Axel* and *Crow*, where post-conviction ineffectiveness of counsel entitled the applicants to an opportunity to pursue the proceeding that they were deprived of, Applicant here should be afforded an opportunity to move for shock probation. That is the benefit he bargained for, and he should receive specific performance of that benefit.[7]

In sum, I agree that rehearing is appropriate in this case because it was a mistake to grant Applicant a new punishment proceeding. But I still disagree with the Court's new chosen remedy—a whole new trial. I am now convinced that the *proper remedy* is an out-of-time motion for shock probation. While an out-of-time motion for shock probation might break new ground jurisprudentially, it does seem to be the most appropriate form of relief—it is consistent with the remedy we grant in other contexts when a trial or appellate counsel's post-conviction ineffectiveness deprives an applicant of a proceeding that he was entitled to have.

---

[7] The convicting court, in its Conclusions of Law relating to Ground Two, cites *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990), for the proposition that Applicant is entitled to a new trial on the basis of ineffective assistance of counsel. But *Welborn* dealt with a failure to investigate, which is pre-conviction ineffectiveness that undermined the integrity of the verdict. *Id.* at 396. Because trial counsel's ineffectiveness here occurred post-conviction, *Welborn* does not control.

## V. CONCLUSION

The Court, today, is presented with an opportunity clarify a line of our jurisprudence that runs contrary to a decision of the Supreme Court of the United States. It is also presented with the opportunity to rectify an inconsistency in its own jurisprudence concerning what remedy is appropriate when an applicant does not receive a bargained for motion for shock probation. Instead of seizing that moment, the Court issues a perfunctory opinion that fails to address either issue. For that reason, and because I believe the ultimate remedy granted by the Court is flawed, I respectfully dissent.

**FILED:**                                                        July 2, 2025
**PUBLISH**