UNITED STATES of America

v.

James C. DISMUKE, Jr., M.D.

Cr. No. 86–8–VAL.

United States District Court,
M.D. Georgia,
Valdosta Division.

March 20, 1987.

Deborah G. Fowler, Asst. U.S. Atty., Macon, Ga., for petitioner.

Millard C. Farmer, Jr., Atlanta, Ga., for respondent.

OWENS, Chief Judge:

Petitioner James C. Dismuke, Jr., M.D., moved this court on January 9, 1987, pursuant to Rule 4(b) of the Federal Rules of Appellate Procedure, to extend the time for filing a notice of appeal from the court's judgment of conviction and sentence that

was imposed in his case. Petitioner further moved this court on January 9, 1987, to vacate and set aside the judgment of this court and sentence imposed upon him on December 2, 1986. On January 28, 1987, an evidentiary hearing was held in order to more fully develop the facts necessary to deciding these motions. The parties having had time to present argument and formal briefs on the matters in controversy, petitioner's claims are ready for decision.

### Background

On June 17, 1986, petitioner was charged in a one-hundred sixty-four count indictment with dispensing controlled substances not in the usual course of professional practice and not for a legitimate medical purpose or research, in violation of 21 U.S.C. § 841(a)(1). Petitioner retained the services of Mr. W. Emory Walters, Esquire, to represent him in the defense of his case. Also associated in the case was C. Paul Bowden, Esquire, and John S. Sims, Jr., Esquire.

On August 18, 1986, a hearing was held to take defendant's plea. At that hearing, the government recited for the record the terms of the plea agreement, pursuant to which petitioner pled guilty to two counts in the indictment. Consistent with its standard practice, the court then asked petitioner a series of questions to ensure that he was competent, that his plea was free and voluntary, that he understood the charges and penalties he faced, and that there was a factual basis for his plea. In this context, petitioner was placed under oath, and, in response to questions posed by the court regarding his involvement in the incidents alleged in the indictment, petitioner testified that the facts as alleged in the indictment were true, and that there was no valid medical reason for the prescriptions he prescribed in those incidents. The court further asked a series of questions designed to ensure that he was knowingly waiving his right to trial by jury. After all these questions were answered, the court was satisfied that there was a factual basis for defendant's plea and that he was freely and voluntarily entering into the plea agreement with full knowledge of his rights. *See* Transcript of Guilty Plea Hearing dated August 18, 1986.

Following an extensive presentence report, the court on December 2, 1986, fined petitioner $50,000 on Count One and $50,000 on Count Four, and sentenced petitioner to a two-year term of imprisonment, which was to be followed by five years on probation. This judgment was not entered on the criminal docket, however, until December.11, 1986. A copy of the judgment was mailed to both petitioner and his attorney.

Subsequent to petitioner's sentencing, on December 22, 1986, petitioner first contacted Mr. Millard Farmer, Esquire, petitioner's present counsel, about the possibility of an appeal. An actual meeting with Mr. Farmer did not occur until December 24, 1986, at which time Mr. Farmer was retained by petitioner. Mr. Farmer then filed the previously mentioned motions on behalf of petitioner.

### Rule 4(b) and Defendant's Motion for an Extension of Time

Rule 4(b) of the Federal Rules of Appellate Procedure provides, in pertinent part, as follows:

> In a criminal case the notice of appeal by a defendant shall be filed in the district court within 10 days after the entry of the judgment or order appealed from. A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof.... A judgment or order is entered within the meaning of this subdivision when it is entered in the criminal docket. Upon a showing of excusable neglect the district court may, before or after the time has expired, with or without motion and notice, extend the time for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision.

Accordingly, a criminal defendant, in order to perfect an appeal of a criminal conviction, must file a notice of appeal within ten

(10) days after the entry of the judgment or order appealed from. In this case, the applicable ten (10) day period expired on December 22, 1986. *See* Rule 26(a) of the Federal Rules of Appellate Procedure. Petitioner has moved within the applicable thirty (30) day period of time, however, for an order granting an extension to file an out-of-time appeal based upon petitioner's excusable neglect. Because petitioner did not file his notice of appeal within the original ten (10) day period, it would be improper for this court to grant petitioner's request absent a showing of facts demonstrating that petitioner's failure to file a notice of appeal was the result of excusable neglect. *See United States v. Dabney,* 393 F.Supp. 529, 552 (E.D.Pa.1975); and *Lacob v. United States,* 59 F.R.D. 329, 331 (N.D. Ill.1973). The court must, therefore, determine whether excusable neglect has been shown by petitioner.

In the civil context, whether neglect in failing to file a timely notice of appeal is excusable is generally said to depend on the facts of the particular case, and leave to file under this standard is typically granted only in extraordinary circumstances where injustice would otherwise result. *See Gooch v. Skelly Oil Company,* 493 F.2d 366, 369 (10th Cir.), *cert. denied,* 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974); *USM Corporation v. GKN Fasteners, Ltd.,* 578 F.2d 21, 22 (1st Cir.1978). A similarly high threshold is suggested by those criminal cases in which excusable neglect is found sufficient to warrant an extension of time. *See, e.g., United States v. Thrower,* 431 F.Supp. 892, 894 (E.D.Pa. 1977) (counsel's confusion arising out of simultaneous handling of two criminal cases similar in nature supports finding of excusable neglect in failure to file notice of appeal in one of them); *United States v. Dabney,* 393 F.Supp. 529, 552 (E.D.Pa. 1975) (excusable neglect shown where sole practitioner is stricken with sudden illness, preventing him from filing timely notice until day he returns to work).

In support of his motion seeking an out-of-time appeal, petitioner testified at the evidentiary hearing that he had not been made aware by his trial attorneys of possible defenses to the charges alleged against him, specifically the defense that if petitioner prescribed the medications to the persons in the indictment believing that there was a valid medical reason to prescribe the medication he could not be found guilty of the crimes charged. Petitioner further stated that had he known of this defense he would not have pled guilty. Transcript of Evidentiary Hearing, pp. 50–52.

With respect to his knowledge of his right to an appeal following his pleading guilty, petitioner testified that his trial attorneys had told him that the only possible relief available at that time was a Rule 35 reduction of sentence motion and a possible claim based upon ineffective assistance of counsel. Transcript of Evidentiary Hearing, pp. 52–53. Petitioner asserted that in no way was he informed of the procedures required to vacate his guilty plea by way of a direct appeal. *Id.* Petitioner's attorney, Emory Walters, further testified that the reason he did not inform petitioner of the procedures for direct appeal was based upon the fact that he believed petitioner had no grounds to set aside his guilty plea. Transcript of Evidentiary Hearing, pp. 155–157.

Petitioner now asserts that Rule 11(c) of the Federal Rules of Criminal Procedure was violated by this court in that he was not informed of, nor made to understand the nature of, the charges to which he pled guilty. Under these circumstances, petitioner claims that the requisite injustice necessary to demonstrate excusable neglect would be worked against him if he is not allowed to attack his conviction by direct appeal. Because this court believes that petitioner must be able to make out at least a colorable claim that the sought after appeal bears some merit before an out-of-time appeal will be granted, the court must review petitioner's contentions surrounding his Rule 11(c) claims.

Rule 11(c) of the Federal Rules of Criminal Procedure provides:

(c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere,

the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense;

. . . .

Petitioner contends that Rule 11 was violated in that he was not advised of the charges against him. Specifically, petitioner asserts that he was not aware of the fact that if he in good faith believed *at the time* he prescribed the medication that there was a valid medical reason for the issuing of such medicine, he could not be held criminally liable. Rather, petitioner claims that as he understood it at the time he pled guilty, if, *in fact*, there was no valid medical reason for issuing the prescription, he could be held criminally liable. Thus, when petitioner stated at his guilty plea hearing that there was no valid medical reasons for prescribing the medications in the indictments, he merely meant that although he now knew that those prescriptions should not have been written, at the time he wrote those prescriptions, based upon what the agents stated to him, he believed there was a valid medical reason for issuing the medication. *See* Transcript of Guilty Plea Hearing, pp. 4–6; and Transcript of the January 28, 1987, Evidentiary Hearing, pp. 50–51. Because the court failed to explain this defense, petitioner claims Rule 11 was violated, and, therefore, he is entitled to vacate his guilty plea.

This evidence in a vacuum might be sufficient to warrant allowing petitioner to withdraw his guilty plea; however, the facts surrounding petitioner's representation by his defense counsel make it impossible for this court to accept petitioner's statements concerning his understanding of the charges against him. At the evidentiary hearing, both Mr. Walters and Mr. Sims testified that they undertook exten-

sive investigations designed to develop a defense to the charges against petitioner. They further testified that they discussed the results of these investigations with petitioner and explained the implications of this evidence with reference to the defenses available to him. Furthermore, Mr. Walters supplemented the record with an affidavit clearly stating that petitioner had been informed on numerous occasions of the good faith defense. On this issue, Mr. Walters states in his affidavit,

On page 39 of the transcript of the testimony of James C. Dismuke, Jr. and other areas of the transcript, Dismuke alleges that none of the attorneys ever discussed with him that good faith on his part was a defense to the charges. This is not true. There were endless discussions with Dr. Dismuke that if he, in fact, acted with the good faith belief that the medications were administered or prescribed in the usual course of professional practice and for a legitimate medical purpose, then this was a defense to the charges. Every possible and conceivable defense, even to the possibility of entrapment by the undercover agents, was discussed with James C. Dismuke, Jr. during the preparation of his case.

Given this information, it is clear that when the court asked petitioner "[w]as there a valid medical reason for that prescription," petitioner's response was made in full awareness of the good faith defense, and was, thus, an acknowledgment on his part that he knew at the time he prescribed the medication that there was not a valid medical reason for that prescription. Petitioner's Rule 11 violation, therefore, has no merit, and accordingly no injustice will be worked by not allowing a direct appeal in his case.

■ Another basis for finding excusable neglect is if the failure to timely file a notice of appeal was caused by the oversight or neglect of petitioner's attorney. *See Moore's Federal Practice* ¶ 204.19, at 4–130 (3rd ed. 1986). Numerous cases have held that an attorney's failure to file an appeal after being instructed to do so will always entitle the defendant to an out-

of-time appeal, regardless of the defendant's chances of success on appeal. *See, e.g., Thor v. United States,* 574 F.2d 215 (5th Cir.1978); *Arrastia v. United States,* 455 F.2d 736 (5th Cir.1972); *Kent v. United States,* 423 F.2d 1050 (5th Cir.1970); *Atilus v. United States,* 406 F.2d 694 (5th Cir. 1969); *Bray v. United States,* 370 F.2d 44 (5th Cir.1966). While it is clear in this case that petitioner's trial attorneys did not advise him of any rights that he might have to a direct appeal in his case, by pleading guilty petitioner waived all but a few grounds on which to appeal. *See Barrientos v. United States,* 668 F.2d 838, 842–43 (5th Cir.1982). Petitioner's attorneys were not negligent in failing to advise petitioner of these few grounds, especially in light of this court's finding that petitioner did understand the charges against him when he pled guilty. *See Ferguson v. United States,* 699 F.2d 1071 (11th Cir.1983).

Accordingly, based upon the evidence and testimony presented at the hearing on January 28, 1987, the supplemental evidence presented by way of affidavits following this hearing, and the evidence and testimony of record, the court makes the following findings of fact relevant to the issue of excusable neglect:

1. That petitioner was a Doctor of Medicine who retained the high level of intelligence required by his profession;

2. That petitioner's trial counsel spent many hours researching and preparing petitioner's case for trial;

3. That in the course of that preparation, petitioner was apprised of the nature of the charges against him and made to understand the defenses available to him;

4. That when petitioner responded to the court's questioning that there was no valid medical reason in prescribing the medication at issue, he was admitting to the court that at the time he prescribed the medication, he knew that there was not a valid medical reason for the prescription;

5. That petitioner's present statement that he did not understand the nature of the charges against him when he pled guilty results solely from his disappointment in not receiving probation;

6. That petitioner's attorneys were at all times zealous and effective in preserving petitioner's rights; and

7. That ultimately it was petitioner's fault that an appeal was not filed within the applicable ten (10) day period, and, further, that the petitioner's reasons for not filing an appeal until after the applicable time period had expired did not constitute excusable neglect.

For the foregoing reasons, petitioner's motion for leave to file an out-of-time appeal is hereby DENIED.

### *Petitioner's Application for 28 U.S.C. § 2255 Relief*

Petitioner has further moved this court pursuant to 28 U.S.C. § 2255 to vacate the judgment of conviction and sentence entered on December 11, 1986, in his case. This statute provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence....

■ Petitioner raises in his motion two grounds for relief under section 2255—a Rule 11 violation and ineffective assistance of counsel. In deciding whether these claims bear merit, it is important to remember the procedural posture of his case. Since this is a collateral attack on the sentence imposed by this court, petitioner must demonstrate more than a mere failure to comply with the formal requirements of Rule 11 to gain relief. When a collateral attack is made on a guilty plea for failure of the district court to literally comply with Rule 11, petitioner must show prejudice in order to qualify for section 2255 relief. In the absence of a fundamental defect which inherently results in the miscarriage of jus-

tice, or an omission inconsistent with the demands of fair procedure, relief cannot be given in a collateral attack on a guilty plea conviction based upon failure of Rule 11 compliance when the plea was taken. *See Lilly v. United States,* 792 F.2d 1541, 1544 (11th Cir.1986) (citing *Keel v. United States,* 585 F.2d 110, 113 (5th Cir.1978)). Accordingly, the court must look to the core concerns of Rule 11 to decide whether the requisite miscarriage of justice has been demonstrated.

The core concerns of Rule 11 has been stated as being:

1. The guilty plea must be free from coercion;

2. The defendant must understand the nature of his plea; and

3. The defendant must know the consequences of his plea. *See United States v. Bell,* 776 F.2d 965, 968 (11th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986). Of these concerns, petitioner contends the court failed in its duty to apprise him of the nature of the charges against him, and, further, failed to ascertain whether he understood the nature of those charges. In support of these contentions petitioner points to the testimony of his wife, Ms. Mary Dismuke, his daughter, Ms. Sharon D. Fykes, and his own testimony, which he asserts stands for the proposition that he was led to believe that there were no available defenses to the crimes he was charged with, more specifically, that he was misled into believing that good faith in issuing the prescriptions was not a defense to the crimes alleged in the indictment. *See* Transcript of Evidentiary Hearing, pp. 37–40, 86–87, 106–107.

As previously discussed, however, this court is convinced that petitioner did understand the nature of the charges against him, and, further, that he was aware of the good faith defense as it applied in his case. This conclusion is based upon the previously mentioned findings of fact and the following additional findings:

1. That petitioner signed a written plea agreement which clearly set forth the charges against him;

2. That the nature of the charges against petitioner were not so complicated or complex that a person of petitioner's sophistication and intelligence being assisted by three attorneys could not understand them;

3. That the testimony by petitioner's wife and daughter concerning the attorneys' explanation of the merits of the case and available defenses are not credible given the distraught nature of the family following petitioner's conviction; and

4. That petitioner's testimony concerning his knowledge of the charges against him is also not credible, and stems from his unrealized expectation of probation. *See* Petitioner's Memorandum of Law filed February 6, 1987 ("After the sentencing, Dr. Dismuke was upset and disgruntled with what he thought to be an excessive amount of punishment, especially excessive in light of his 30 years of providing medical and community service to the people of his area...."). Because this court is not convinced that petitioner failed to understand the nature of the charges against him, it is impossible for the court to find the requisite miscarriage of justice resulting from the alleged violation of Rule 11.

■ Petitioner also asserts an ineffective assistance of counsel claim in his section 2255 motion. The standard for judging the conduct of petitioner's trial attorneys is set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under that decision, petitioner is required to show that counsel's performance fell below an objective standard of reasonableness, and, further, that this deficient performance prejudiced petitioner's defense. The specific allegations of ineffective assistance in this case, however, utterly fail in meeting that standard.

Petitioner has raised numerous facts that he asserts requires a finding that he received ineffective assistance of counsel. Firstly, petitioner contends that Mr. Walters' physical condition was a significant factor that caused him not to represent petitioner zealously. This court finds these allegations to be meritless. In his affidavit, Mr. Walters specifically refutes these

allegations and points to facts demonstrating his continuing ability following his illness to effectively represent his client. Mr. Walters has practiced before this court for many years and has always demonstrated himself as being a very able counsellor. Mr. Walters' time sheets provided to this court further demonstrate that he actively pursued his client's interests at all times and, primarily through this effort, was able to get the government to enter into a plea bargain whereby petitioner would plead guilty to two counts and the remaining one-hundred sixty-two counts would be dismissed. After reviewing the time sheets of all trial counsel, and after hearing their testimony, it is clear that they have proven that a well-orchestrated effort was undertaken to prove petitioner innocent. Numerous doctors were interviewed about the medications at issue, the petitioner's medical records were compiled, witnesses were ascertained and interviewed, and all matters necessary to prepare for trial were well handled. Petitioner was advised of the results of all this work, and, based upon this information, he reached an independent decision to plead guilty with the hope that he would get a fine and probation.

Petitioner contends that his attorneys misled him into believing that he would get probation. This court, however, specifically advised him at the guilty plea hearing:

> In addition, as you acknowledge in writing, as to each of these two counts, you expose yourself to a maximum possible penalty of three years imprisonment and/or a fine of $250,000, and a special parole term of at least one year, plus a mandatory assessment of $50 per count. Now, by virtue of your plea agreement, the government agrees that the maximum time that will be imposed upon you; that is, time to actually serve would be three years.

Petitioner was also aware of two pharmacists recently being sent to jail by this court for filling prescriptions without proper authorization. It is clear, then, that petitioner was aware of the possibilty of imprisonment when he pled guilty, but that he hoped such a situation would not come

to pass. Failure of this mere expectation to occur does not constitute ineffective assistance of counsel. Reviewing the remaining alleged deficiencies in his trial counsels' performance, this court finds that nothing done by them fell below an objective standard of reasonableness, nor do they demonstrate that but for these alleged errors, he would not have pled guilty and would have insisted on going to trial. Petitioner's claim, therefore, of ineffective assistance of counsel is totally without merit.

Accordingly, this court finds that petitioner has constitutionally pled guilty to the crimes of dispensing controlled substances not in the usual course of professional practice and not for a legitimate medical purpose or research, and was given constitutionally effective assistance of counsel before deciding to plead guilty to those charges. His petition for writ of habeas corpus, therefore, is in all respects DENIED.