Jesse Allen THROWER, Petitioner,

v.

UNITED STATES of America, Respondent.

Nos. 94–1887–CIV–T–17, 90–209–CR–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 26, 1995.

Jesse Allen Thrower, pro se.

Dennis I. Moore, Tampa, FL, for U.S.

### *ORDER*

KOVACHEVICH, District Judge.

Petitioner, Jesse Allen Thrower, a *pro se* litigant, filed a writ of Habeas Corpus (Docket No. 124) pursuant to Title 28, United States Code § 2255 on November 25, 1994. Respondent filed a response (Docket No. 130), in which Respondent incorporates a request to dismiss the petition, on May 19, 1995.

### *PROCEDURAL HISTORY*

A Superseding Indictment was returned on February 6, 1991 charging the Petitioner with one count of conspiracy to possess with intent to distribute methamphetamine and amphetamine hydrochloride in violation of 21 U.S.C. § 846. A second count charged the Petitioner with possession with intent to distribute amphetamine hydrochloride in violation of 21 U.S.C. § 841(a)(1).

A plea agreement was filed on February 11, 1991. Petitioner pled guilty to Counts One and Two of the Superseding Indictment on February 11, 1991. On May 3, 1991, Petitioner was sentenced to 63 months imprisonment, followed by three years supervised release on each count, to run concurrently.

Petitioner did not file a direct appeal from the judgment of conviction but on November 25, 1994 after serving 42 months of his 63 month sentence, he filed a Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255. Petitioner prays that this Court grant an evidentiary hearing in this matter and requests appointment of counsel to represent him. Petitioner further re-

quests that this Court grant bond pending the resolution of his 2255 Motion, or in the alternative, redesignation of confinement.

Petitioner challenges his conviction on eight grounds, claiming ineffective assistance of his privately retained counsel:

(1) Counsel was ineffective where he failed to appreciate and advise Petitioner of the true significance of the statutory and guideline penalty provisions and to investigate potential defense so Petitioner could have made an informed decision to plead or not to plead;

(2) Counsel was ineffective by allowing Petitioner to plead guilty without knowledge of the consequences, thereby creating an involuntary guilty plea;

(3) Counsel was ineffective by allowing the Government to violate the plea agreement including its duty of good faith and fair dealings by failing to fully advise the Court of Petitioner's substantial assistance, and failing to file a Rule 35(b) within a year;

(4) Counsel was ineffective where he failed to correctly argue for further reduction of sentence as a minor participant for 4 points;

(5) Counsel was ineffective where he failed to present himself without intimidation to the sentencing judge;

(6) Counsel was ineffective where he failed to argue relevant conduct;

(7) Counsel was ineffective where he failed to argue the use of methamphetamine instead of amphetamine, and argue the "generic" use of methamphetamine; and

(8) Counsel was ineffective where he failed to file an appeal.

## DISCUSSION

■ In *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court stated that ineffective assistance of counsel claims fall into two categories. The first category involves claims that the government violated the defendant's right to effective assistance of counsel by impermissibly interfering with counsel's ability to make independent decisions about how to conduct the defense. *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063–64. In the second category are claims that the defendant was deprived of his right to the effective assistance of counsel because his counsel, whether retained or appointed, simply failed to provide adequate legal assistance. Claims in the second category are called "actual ineffectiveness claims." *Id.*

■ The Supreme Court established a two-pronged test for evaluating "actual ineffectiveness" claims. Under the first prong, a reviewing court must determine whether counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Under the second prong, the court must determine whether counsel's performance, if deficient, prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. In order to sustain an "actual ineffectiveness" claim, the defendant must prevail on both the performance and prejudice prongs.

■ Under *Strickland* guidelines for reviewing performance, the convicted defendant must identify the specific acts or omissions he alleges were not the result of reasonable professional judgment on the part of his counsel. The court then must decide whether, in light of all of the circumstances facing trial counsel, his conduct fell within the wide range of professionally competent assistance expected of an attorney. *Id.* at 690, 104 S.Ct. at 2066. Counsel "is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." *Id.* Therefore, Petitioner bears the burden of showing, first, that counsel's performance was constitutionally deficient and, second, that the deficient performance was prejudicial.

■ The Sixth Amendment guarantees a criminal defendant the right to effective, not errorless, counsel. *Young v. Zant,* 677 F.2d 792, 798 (11th Cir.1982); *Mylar v. Alabama,* 671 F.2d 1299, 1300 (11th Cir.1982). It does, however, require that counsel's conduct fall within the range of competency, generally demanded of attorneys in criminal cases. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970);

accord, *Beckham v. Wainwright,* 639 F.2d 262, 267 (5th Cir.1981).

■ In order to apply the "Strickland standard," the Court must inquire into the actual performance of defense counsel and determine whether representation was reasonably effective based on the totality of the circumstances in the entire record. *Washington v. Watkins,* 655 F.2d 1346, 1355 (5th Cir.1981); *Goodwin v. Balkcom,* 684 F.2d 794, 804 (11th Cir.1982) *cert. denied,* 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983).

*Ground One*

In Ground One, Petitioner claims that his trial counsel was ineffective in that counsel failed to appreciate and advise Petitioner of the true significance of the statutory and guideline penalty provisions, and to investigate potential defenses, so Petitioner could have made an informed decision to plead or not to plead. Petitioner further claims that he expected a sentence of three years, but instead he received 63 months.

■ The fact that Petitioner, who had been represented by competent counsel and thoroughly understood what he was doing in entering a plea of guilty to an indictment, received a longer sentence than he thought that he should have, is not a basis for vacating sentence, where no promises had been made to him by prosecution or the judge. *Tabor v. U.S.,* 203 F.2d 948 (5th Cir.1953), *cert. denied* 345 U.S. 1001, 73 S.Ct. 1148, 97 L.Ed. 1407.

■ A review of the plea transcript, on page 4, reflects that Petitioner was asked by this Court to examine the proposed plea agreement, the initials on each page and the signature on the signature page to ensure that those were his. Petitioner affirmatively responded that the initials and the signature were his. Petitioner further acknowledged to the Court that he and his attorney have discussed the sentencing guidelines and that he understood how the guidelines would apply to his case.

Further, the plea proceeding transcript, on pages 13–14, reflects the following:

"THE COURT: All right. Do you know what the possible, possible maximum sentence is that you could receive? Do you know what it is?

"THE DEFENDANT: Yes, ma'am, me and my lawyer have been over it.

"THE COURT: Okay, well, do you know in count one it's twenty years and a fine of one million dollars, and the term of supervised release of three years, do you understand that?

"THE DEFENDANT: (Witness indicating affirmatively.)

"THE COURT: Yes?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: And the maximum under count two is another twenty years, and the fine of one million dollars and the term of supervised release of three years, do you understand that?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: So the maximum exposure by the statute if you added one plus one would be forty years, two million dollars, and three years supervised release, do you understand that?

"THE DEFENDANT: Yes, ma'am, I do.

"THE COURT: All right, now, this is a Sentencing Commission Guidelines case. Mr. Scott, have you gone over with your client how the Sentencing Commission Guidelines might apply to his case?

"MR. SCOTT (Defense Counsel): Yes, Your Honor.

"THE COURT: Is that true, Mr. Thrower?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Do you understand that, Mr. Thrower?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Do you understand that the Court will not be able to determine the exact guideline sentence for your case until after the pre-sentence report has been completed and you and the Government have had an opportunity to challenge the facts reported by the Probation Officer, understand that?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Do you also understand that after it's been determined that guideline applies to your case, the Court had the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the guidelines, do you understand that?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Do you also understand that under some circumstances you or the Government may have the right to appeal any sentence that the Court imposes, understand that?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Okay. Do you also understand that if the sentence is more severe than you expect, you'll still be bound by your plea and will have no right to withdraw it, understand that?

"THE DEFENDANT: Yes, ma'am."

The Court finds the Petitioner's counsel was competent and that Petitioner thoroughly understood what he was doing in entering a guilty plea. The Court finds no basis for vacating Petitioner's sentence since neither the prosecution nor this Court made any promises to him. Petitioner plead guilty because he was guilty (Plea Agreement, p. 7). In fact, Petitioner received a sentence far below the statutory maximum because of his willingness to accept responsibility and plead guilty.

*Ground Two*

 In Ground Two, Petitioner claims that his counsel was ineffective by allowing him to plead guilty without knowledge of the consequences, thereby creating an involuntary plea. The Court may set aside a guilty plea only if the plea does not satisfy due process; if defendant understands charges against him, understands consequences of guilty plea and voluntarily chooses to plead without being coerced to do so, the guilty plea will be upheld on habeas corpus review. *Stano v. Dugger,* 921 F.2d 1125 (11th Cir. 1991).

A review of the plea transcript from pages 4 to 11 and 20 to 24 reflects the following:

"THE COURT: You already have sworn him, right, Madam Clerk?

"THE CLERK: Yes.

"THE COURT: Starting again, can you hear and see all right?

"THE DEFENDANT: Yes.

"THE COURT: Can you read, write and understand the English language?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: All right. Now, there's a proposed plea agreement that is in front of you there, sir. I want you to examine that proposed pleas agreement and the initials on each page the signature on the signature page. Are those your initials and your signature?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Okay. Now, this next thing I want to show you is what purports to be a copy of the Superseding Indictment that has been filed in this case. I want you to examine that Superseding Indictment and I want you to look at it and tell me if those are the charges to which you're entering a plea?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: All right. I want you to initial that on the lower left hand corner because that's going to become part of the plea agreement. We'll make a photocopy of that, Madam Clerk.

"THE COURT: Okay. Now, before I can accept your plea, Mr. Thrower, I must ask you some questions under oath to see if you're making this plea freely and voluntarily, without threats, force or promise except the promises contained in the four corners of this plea agreement you just identified. If I ask you any question you don't understand, stop me and I will explain it to you.

"You have a right to persist in your not guilty plea until I accept your guilty plea and nothing you say can be used against you except if you lie to me, make a false statement, do not tell me the truth, you may be charged with the crime of perjury; understand that?

"THE DEFENDANT: Yes, ma'am.

**1478**

"THE COURT: Okay. In the case of United States of America versus Jesse Allen Thrower, case number 90–209–Criminal–T–17–C, are you the Defendant?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: How do you plead to count one in the Superseding Indictment; guilty or not guilty?

"THE DEFENDANT: Guilty.

"THE COURT: How do you plead to count two of the Superseding Indictment; guilty or not guilty?

"THE DEFENDANT: Guilty.

"THE COURT: All right, sir, how old are you, sir?

"THE DEFENDANT: Thirty-two, ma'am.

"THE COURT: How much education have you had, sir?

"THE DEFENDANT: High school graduate.

"THE COURT: Okay. You already told me you can hear and see all right, you can read, write and understand the English language, correct, sir?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Okay, what kind of work do you do for a living, sir?

"THE DEFENDANT: Construction work.

"THE COURT: Okay. Are you presently right now under the influence of any drugs, pills, alcohol or medication?

"THE DEFENDANT: No, ma'am.

"THE COURT: When was the last time you had any of those things, including medication or alcohol or anything?

"THE DEFENDANT: I'm on Xanax.

"THE COURT: When did you take that prescription?

"THE DEFENDANT: I took one pill this morning. I have to take three a day.

"THE COURT: What time did you take it?

"THE DEFENDANT: I believe it was 6:00 o'clock this morning.

"THE COURT: All right, let the record reflect it's 9:31 by the Courtroom clock. Do you know where you are today?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Where are you?

"THE DEFENDANT: Right here in the Federal Courthouse.

"THE COURT: Sure are. Do you know what city?

"THE DEFENDANT: Tampa, Florida.

"THE COURT: Okay, do you know what you are doing right now?

"THE DEFENDANT: Yes, ma'am. I'm fixing to go—

"THE COURT: What are you doing?

"THE DEFENDANT: I'm fixing to go away for awhile, I believe.

"THE COURT: All right. Well, that may be true. You're entering a plea of guilty to each of these charges in the Superseding Indictment, count one and count two, is that right?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Is that what you want to do?

"THE DEFENDANT: Yes, ma'am, I believe that would be to the best of my ability.

"THE COURT: All right. Have you ever been treated for a mental illness?

"THE DEFENDANT: No, ma'am, I've had head injuries.

"THE COURT: Okay. Have you ever been to see a psychiatrist?

"THE DEFENDANT: No, ma'am.

"THE COURT: Okay. Has anyone forced you to enter this plea?

"THE DEFENDANT: No.

"THE COURT: Any threats been made against you for entering this plea?

"THE DEFENDANT: No, ma'am.

"THE COURT: Have any promises been made to you for entering this plea other than the promises contained in the four corners of this plea agreement you just identified?

"THE DEFENDANT: No, ma'am.

"THE COURT: You understand that by making this plea, you're admitting that you're guilty of the charges in both count one and count two of the Superseding Indictment; understand that?

"THE DEFENDANT: Yes, ma'am, I do.

"THE COURT: Do you also understand that your case was set for trial today, and that the Government was ready to proceed against you?

"THE DEFENDANT: Yes.

"THE COURT: Do you also understand that the government would have had to have established your guilt beyond a reasonable doubt, you didn't have to prove that you're innocent, understand that?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Okay. Do you also understand that you have an absolute constitutional right to a jury trial, and as a part of that right, you had the right to have your lawyer cross examine the witnesses that would have testified against you? You had the right to present your own witnesses, you had the right to take the stand and testify in your own behalf if you wished to do so, and you had the right not to take the stand, you could have sat at counsel table and done absolutely nothing, and the Government would have had to have established each and every element of the charges against you beyond a reasonable doubt to the Jury. By changing your plea, you're giving up your right to that; won't be a trial, won't be a jury, won't be witnesses, won't be evidence. By entering this plea, you're giving up your right to a jury trial and all the other rights I've just explained to you, understand that?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: All right. You also understand that you're losing certain civil rights; the right to vote, the right to serve on a Jury, the right to possess firearms and the right to hold public office, you understand that?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Do you also understand that you're losing the right to appeal regarding the charges in this case, however, you do retain the right to question whether you're entering this plea freely and voluntarily and whether the Court has jurisdiction to take your plea, but other than that, you're losing your appeal rights, understand that?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Yes?

"THE DEFENDANT: Yes.

"THE COURT: Okay, sir, do you know what you are charged with?

"THE DEFENDANT: Yes, ma'am, I do.

"THE COURT: Were you a willing participant?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: You weren't just a knowing spectator while all this was going one, were you?

"THE DEFENDANT: No, ma'am, I was a participant.

"THE COURT: And in his opinion to you, what I don't want to know is anything about attorney/client, but after you've talked with him about this, what is your position? Are you inclined to go forward with a defense in this case or are you inclined to enter this plea?

"THE DEFENDANT: I'm inclined to enter the plea, ma'am.

"THE COURT: Are you doing that because you think that it is in your best interest?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Based upon what evidence the Government has?

"THE DEFENDANT: Yes, ma'am. I'd like to help the Government in any way I can to put a stop to it.

"THE COURT: Okay, so you're doing this to admit your guilt and also to cooperate?

"THE DEFENDANT: Yes, ma'am.

"THE COURT: Now, Mr. Scott, I got to turn to you. The issue of the defense of entrapment, have you gone over that with your client?

"MR. SCOTT: Yes, Your Honor.

"THE COURT: And have you gone over your evaluation of the discovery and the evidence in this case?

"MR. SCOTT: Yes, Your Honor.

"THE COURT: And have you made your recommendations to your client about this defense of entrapment?

"MR. SCOTT: I have made my recommendation, he's before the Court admitting his guilt.

"THE COURT: Okay. So, without violating the attorney/client privilege, I think you all are answering my questions, okay. Now, is there anything else you want to tell me, Mr. Thrower, about the plea or the charges, not about what sentence you might receive, just the plea or the charges?

"THE DEFENDANT: No.

"THE COURT: You'll get a chance to talk to me at sentencing.

"THE DEFENDANT: Just, I'd like to help put a stop to it. I got mixed up in it and it needs to be stopped.

"THE COURT: I couldn't agree with you more. There's plenty of people coming in here in front of me saying the same thing.

Mr. Scott, do you think your client clearly understands what he is doing?

"MR. SCOTT: Yes, Your Honor.

"THE COURT: Have you been over this with him in great detail?

"MR. SCOTT: Yes, Your Honor.

"THE COURT: Are you in agreement with what he is doing?

"MR. SCOTT: Yes, Your Honor.

"THE COURT: All right. The Court specifically finds that the Defendant is an able-bodied male of average intelligence, he fully understands the nature of the charges and the possible maximum sentence. He is not understand the influence of drugs, pills, alcohol or medication, nor has he been treated for a mental illness. The plea is not produced by threats, force or promise, except those promises dictated into the record in the plea agreement. The Defendant clearly understands that by making this plea, he's admitting that he's guilty of the charges in both count one and count two of the Superseding Indictment. He clearly understands that he has a right to a Jury trial and the fact that this plea is a waiver of that right and all the other rights contained therein. He understands that he's losing certain other rights, civil and appeal rights. He's had adequate and competent counsel who has advised him of his rights and possible defenses. The Court specifically finds that he's making his plea of guilty to the charges freely and voluntarily and they will be accepted by this Court. The Court reiterates that the Government could establish a prima facie case herein. The Court hereby accepts the plea agreement. The Court hereby adjudicates the Defendant guilty of the charges."

The Court finds no merit in Petitioner's contention in Ground Two since a review of the plea transcript shows that Petitioner had an adequate and competent counsel who advised him of his rights and possible defenses. The Court further finds that Petitioner's guilty plea to the charges was freely and voluntarily made and cannot give rise to ineffective assistance of counsel claim.

*Ground Three*

 In Ground Three, Petitioner claims ineffective assistance of his counsel by allowing the Government to violate the plea agreement, including its duty of good faith and fair dealings by failing to fully advise the Court of Petitioner's substantial assistance and failure to file rule 35(b) motion within a year.

Neither the sentencing transcript nor that of the plea proceeding reveals any agreement between Petitioner and the United States that the Government would file a rule 35(b) motion within one year. The change of plea transcript establishes that Petitioner initially refused to cooperate with the Government, and when he decided to cooperate, his assistance was of little value. Consequently, this Court finds that Petitioner was not prejudiced by his counsel's failure to enforce a plea agreement to file a rule 35(b) motion where such agreement did not exist.

*Ground Four*

 In Ground Four, Petitioner claims ineffective assistance where counsel failed to correctly argue for further reduction as a

minor participant for 4 points. Petitioner's allegation in Ground Four is specifically refuted by the contents of sentencing transcript on pages 17 and 18:

"MR. SCOTT: As the Court is aware, the other objection I had and the position I had is that he had a minimal role in this conspiracy and the actual delivery that Mr. Buie conspired and was arrested for and is convicted for today.

"Based on those two statements, I beg the Court to bring him to the Level III and Offense Level 20, which would give him a Guidelines' score of 41 to 51; otherwise, the Court is well aware that his position in this conspiracy is way lower than Mr. Buie's—and I'm not saying anything derogatory to Mr. Buie and his cooperation, but my client at one time had been threatened not to say anything to anybody about anything and that's why he turned down the original offer by the United States Government to cooperate and to provide substantial assistance.

"In final summation, Judge, before the Court is his family, his mother, father, grandparents, his sisters and aunts, just to verify through the letters that he has a very strong community relationship. He is not abandoned by his family and he will be a productive citizen as soon as he is released back into society.

"THE COURT: But each of them understands that this Court doesn't have discretion beyond what Congress passed in these new Federal Sentencing Guidelines, and that as fine a person as they may think he is, he is a convicted felon.

"MR. SCOTT: We all appreciate that, Your Honor.

"THE COURT: Well, appreciate it beyond the point that they understand that he stands here and gets no worse treatment or no better treatment than anybody else who has been convicted with regard to drugs.

"MR. SCOTT: They understand that."

The record reflects that Petitioner's counsel vigorously argued for further reduction as a minor participant, and consequently this Court finds no merit in Petitioner's conclusory allegations in Ground Four.

*Ground Five*

In Ground Five, Petitioner claims ineffective assistance of his counsel where counsel failed to present himself without intimidation to the sentencing Judge. The sentencing transcript shows no evidence that Petitioner's counsel was intimidated by this court. Specifically the sentencing transcript on pages 25 to 27 reflects the following:

"THE COURT: Now, back to you, Mr. Scott. What, if anything, do you wish to stay in mitigation?

"MR. SCOTT: In mitigation, Judge, beside the many, many letters that the Court has received in support of Jesse Thrower, again, his criminal history did not really start until 1990, in spite of the offenses for which he has been convicted.

"He is a good person. He got mixed up in this and there is no doubt, he has admitted his participation. In comparison to the manufacturers and distributors, Jesse Thrower was a small-time player in a small town.

"Quite frankly, I would find that 92 months far exceeds the necessity for any type of incarceration, the length of incarceration that Mr. Thrower would require or that his participation in this offense would require; and in argument to that, his family is here and they beg the Court for mitigation.

"THE COURT: Tell me how I can depart from the Guidelines when the Government will not appeal and it won't be reversed by the Eleventh Circuit.

"MR. SCOTT: I have none.

"THE COURT: You have none. Do they know that, his family sitting out there? Do they realize that the Judge's hands are tied under these Sentencing guidelines? Where he scores out in criminal history, the way he scores out, that I don't have the discretion to do it that will be held up on appeal; do they understand that?

"MR. SCOTT: The only hope we had, your Honor, is the criminal history category would be reduced and his level of participation would be reduced, and the Court has already ruled on that.

"THE COURT: Mr. Scott, the problem is that the Government has a right to appeal that; and when the Government takes the appeal, I'm going to be reversed because it's outside of what the Guidelines allow, that's the problem."

The sentencing transcript establishes defense counsel's vigorous argument that the P.S.I. report overrepresented the seriousness of Petitioner's criminal record. This Court agreed, and reduced Petitioner's category by level two. Petitioner has neither shown that his counsel was intimidated by this Court, nor has Petitioner shown that any such intimidation affected counsel's representation of Petitioner.

*Ground Six*

█ In Ground Six, Petitioner claims that his counsel was ineffective when he failed to argue relevant conduct. A further review of the sentencing transcript reflects the defense counsel arguing on page 15 that the Petitioner "was a very low level dealer or deliverer"; on page 17 "he had a minimal role in this conspiracy and the actual delivery"; and that "the Court is well aware that his position in this conspiracy is way lower than Mr. Buie's"; and on page 26 that in comparison to manufacturers and distributors petitioner was a small time player in a small town". On page 17 of the Sentencing Transcript, defense counsel further begged the Court to bring Petitioner to level III and offense level 20, which would give him a guideline score of 41 to 51. Consequently, the Court finds no merit in Petitioner's contention in Ground Six.

*Ground Seven*

█ In Ground Seven, Petitioner claims ineffective assistance where counsel failed to argue the use of methamphetamine instead of amphetamine, and argue the "generic" use of methamphetamine.

A review of pages 12 to 15 of the Sentencing Transcript reflects the follows:

"THE COURT: So what I'm reading can just go straight forward, right?

"Okay. Starting with Jesse Thrower, no changes.

"Jesse Allen Thrower, on February the 11th, 1991, and May 3, 1991, you entered pleas of guilty to counts 1 and 2 of the Indictment charging you with conspiracy with intent to distribute—

"DEFENDANT THROWER: Amphetamines.

"THE COURT: No. It's Methamphetamine. That's what I was just told, methamphetamine and amphetamines, and possession with intent to distribute amphetamines in violation of Title 21, United States Code, Sections 841 and 841(a)(1); is that correct, Mr. Scott?

"MR. SCOTT: Yes, Your Honor.

"MR. MOORE (U.S. ATTORNEY): That is correct.

"THE COURT: Does your client understand that, yes or no?

"DEFENDANT THROWER: No, ma'am.

"THE COURT: You don't.

"DEFENDANT THROWER: I understood that it was not methamphetamine, it was amphetamines.

"MR. SCOTT: Your Honor, in my position statement I made it clear to the Court that what he was conspiring to deliver and was talking about delivering was the substance crank, which to him, he had no knowledge whatsoever as far as the chemical composition was. The DEA defines crank as methamphetamine and that's what he was talking about, crank.

"THE COURT: So he has, in fact, pled guilty to methamphetamine.

"MR. SCOTT: Yes, Your Honor.

"THE COURT: Do you understand that, Mr. Thrower?

"DEFENDANT THROWER: Yes, ma'am, I understand that.

"THE COURT: Do you understand that now, that regardless of what you thought it was, when you use the term "crank", that's what it is?

"DEFENDANT THROWER: Yes, ma'am, I understand that.

"THE COURT: All right. You pled guilty to charges alleging conspiracy with intent to

distribute methamphetamine, both methamphetamine and amphetamines, and possession with intent to distribute amphetamines in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

"It is the duty of the court to address several questions:

"First, Mr. Thrower, have you and your attorney had the opportunity to read and discuss the Presentence Report that has been prepared by Probation?

"DEFENDANT THROWER: Yes, ma'am, I have.

"THE COURT: Have you gone over it with your client, Mr. Scott?

"MR. SCOTT: Yes, Your Honor.

"THE COURT: Have you read it, Mr. Moore?

"MR. MOORE: I have, Judge.

"THE COURT: With the exception and only the exception of the objections that have been filed to the addendum to the Presentence Report, are there any other objections as to the factual accuracy of the report or application of the Guidelines?

"MR. SCOTT: Considering my position statement, none other.

"THE COURT: Are they accurately reflected in the addendum to the Presentence Report?

"MR. SCOTT: Yes, absolutely.

"THE COURT: And there are no other objections by the defendant, correct?

"MR. SCOTT: No, Your Honor.

"THE COURT: Any other by the Government?

"MR. MOORE: No, ma'am.

"THE COURT: Now, let us look at the objections that are in the addendum. Paragraph 14, 2D1.1, what's the objection?

"MR. MOORE: Do you want the Government to—

"THE COURT: What's the Government's objection?

"MR. MOORE: Judge, the Government's objection is that although the drugs in this case actually turned out to be amphetamine hydrochloride rather the methamphetamine, it's the Government's position that Mr. Thrower conspired to possess with intent to distribute methamphetamine.

"The Government's position is that negotiations between Mr. Thrower and the Government agent and the confidential informant involved the use of the term "crank". We would submit to Your Honor that crank is commonly referred to as methamphetamine in the drug trade and the fact that the drugs were in fact amphetamine, it was the defendant's intention to distribute methamphetamine.

"THE COURT: Okay. What's your position, Mr. Scott?

"MR. SCOTT: Your Honor, as stated in my position statement, no matter what the Government's definition of crank is, my client, who was a very low level dealer or deliverer here, had no comprehension of what the real chemical composition, molecular structure, or what have you, of crank was. It was a substance that somebody wanted and a substance he thought that he got for Mr. Robert Davis, the DEA agent.

"THE COURT: The Government's objection is overruled. It's going to stand as Probation has determined it."

The record is clear that Petitioner conspired to possess with intent to distribute methamphetamine. The record also reveals that Petitioner voluntarily and freely pled guilty to possession of methamphetamine, and that defense counsel did read and discuss the P.S.I. report with Petitioner. Consequently, this Court finds no merit to Petitioner's contention in Ground Seven.

*Ground Eight*

In Ground Eight, Petitioner claims ineffective assistance where counsel failed to file an appeal.

Every person has an absolute right to an appeal from a trial court conviction, and a criminal defendant's right to counsel extends through the period for taking an appeal. *Atilus v. United States*, 406 F.2d 694, 697 (5th Cir.1969); *Bray v. United States*, 370 F.2d 44 (5th Cir.1966). General-

ly, courts have held the inexcusable failure of counsel to perfect an appeal constitutes ineffective assistance. *Chapman v. United States,* 469 F.2d 634 (5th Cir.1972). Courts have found that the failure of trial counsel to appeal denies defendant the absolute right to appeal a jury conviction and, therefore, deprives him of his right to effective assistance of counsel. *Lucey v. Kavanaugh,* 724 F.2d 560 (6th Cir.1984); *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

A guilty plea, however, is a very different matter. By offering a guilty plea, the defendant admits all of the elements of a formal criminal charge, and waives all non-jurisdictional defects in the proceeding. *United States v. Jackson,* 659 F.2d 73 (5th Cir.1981). In this case, Petitioner entered a plea of guilty before this Court, and now argues that his retained counsel was ineffective because counsel failed to appeal the sentence which was then imposed. This is the precise issue raised by the defendant in *Barrientos v. United States,* 668 F.2d 838 (5th Cir.1982).

In *Barrientos,* the court considered whether the failure of petitioner's counsel to perfect an appeal from a guilty plea constituted ineffective assistance of counsel, and concluded that, absent a jurisdictional defect, a defendant usually has no right to appeal from a plea of guilty. Similarly, petitioner pled guilty to the charges of the indictment. Under the circumstances, petitioner did not have an automatic right to appeal the sentence after entry of a knowing and voluntary guilty plea.

In *Rhodes v. Estelle,* 582 F.2d 972 (CA 5th Cir.1978), the court held that when a defendant desires to enter a guilty plea the only required duty of counsel is to ascertain whether the plea is voluntarily and knowingly made. Accord; *Lamb v. Beto,* 423 F.2d 85, 87 (5th Cir.1970), *cert. den.* 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84. Therefore, if defense counsel ascertained that his client, Petitioner, voluntarily and knowingly entered the plea of guilty, he fulfilled his required duty.

Following a review of the plea and sentencing transcripts, the Court notes that Petitioner was placed under oath and advised that the purpose of the inquiry was to determine the voluntary nature of this plea. The Court established that Petitioner was pleading guilty to each count of the indictment; that he could read, write and understand the English language; that he knew what he was doing and was not under the influence of drugs, alcohol, medication or mental infirmity; that he had not been threatened to cause him to plead guilty or promised anything in return for pleading guilty; and, that the defendant understood that by pleading guilty he was giving up his right to a jury trial, to hear and have his counsel cross examine the witnesses against him to present his own witnesses, to testify on his own behalf or to decline to do so.

Following the sentencing of Petitioner, this Court specifically advised the Petitioner of his right to appeal as page 37 of the sentencing transcript reflects:

"THE COURT: Mr. Thrower, I wish you well in the future and hope we do see you back in here for a good purpose.

"You are advised of your right to appeal from this judgment within ten days from this date. Failure to appeal within a ten-day period shall be a waiver of your right to appeal.

"The Government may file an appeal from this sentence.

"You are also advised that you are entitled to assistance of counsel in taking an appeal. If you are unable to afford a lawyer, one will be provided for you.

"Now, any questions, Mr. Scott?

"MR. SCOTT: No, Your Honor.

"THE COURT: Mr. Moore?

"MR. MOORE: No, ma'am.

"THE COURT: Mr. Thrower?

"DEFENDANT THROWER: No, ma'am."

There is nothing in the record to indicate that the Defendant actually requested that his counsel file an appeal. The record does establish that this Court advised the petitioner of his right to an appeal, and that he was entitled to an assistance of counsel in taking

an appeal. Consequently the Court finds that Petitioner's claim that he was prejudiced by his counsel's failure to file an appeal is without merit, since the Court specifically advised Petitioner that he was entitled to a counsel in taking an appeal.

### CONCLUSION

Under the first prong of the *Strickland* test, Petitioner must show that his counsel's performance was so deficient that he was not functioning as the counsel guaranteed by the sixth amendment. Review of the record reflects that Petitioner had adequate and competent counsel who advised him of his rights and possible defenses. The record reflects that defense counsel argued vigorously at sentencing and successfully persuaded this Court to drop Petitioner's criminal history category to level three instead of level five, resulting in a 30 month reduction of Petitioner's sentence. This Court finds that defense counsel's performance was neither deficient nor ineffective.

Under the second prong, the Court must determine whether counsel's performance, if deficient prejudiced the defendant. There is no indication that the defense counsel's performance prejudiced the petitioner in any way. Reviewing the actual performance of the Petitioner's counsel, and the totality of the circumstances, this Court determines that representation was reasonably effective and that Petitioner has failed to identify the specific acts that he alleges were not the result of reasonable professional judgment on the part of his counsel.

Under *Strickland,* counsel is presumed to have provided effective assistance. Petitioner has not overcome this presumption, and the Court finds no merit in Petitioner's claim of ineffective assistance on the eight grounds discussed above.

An evidentiary hearing is not required on habeas corpus motion if it conclusively appears from the record that the petitioner is not entitled to relief. *Reed v. United States,* 529 F.2d 1239 (5th Cir.1976). A review of the record, and consideration of the contention of both parties, leads this Court to deny the petition without conducting an evidentiary hearing. Accordingly, it is

ORDERED that Respondent's motion to dismiss the petition for writ of habeas corpus is **GRANTED.** Petitioner's petition is **DISMISSED.** The Clerk of Court shall enter a final judgment of dismissal.

DONE and ORDERED.